HOWELL; BAYLESS, APPELLANT AND CROSS-APPELLEE, *v.* RICHARDSON; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

[Cite as Howell *v.* Richardson (1989), 45 Ohio St. 3d 365.]

(No. 88-346—Submitted March 14, 1989—Decided October 4, 1989.)

*James D. Colner,* for appellant and cross-appellee.

*Ronald B. Janes,* for Hiram Richardson.

*Hamilton, Kramer, Myers & Cheek, Emerson Cheek III* and *David W. Pryor,* for appellee and cross-appellant.

Sweeney, J.

I

The present action was brought pursuant to R.C. 3929.06. This section provides as follows:

"Upon the recovery of a final judgment against any firm, person, or corporation by any person, including administrators and executors, for loss or damage on account of bodily injury or death, for loss or damage to tangible or intangible property of any person, firm, or corporation, for loss or damage on account of loss or damage to tangible or intangible property of any person, firm, or corporation, or for loss or damage to a person on account

of bodily injury to one's spouse or minor child or children, if the defendant in such action was insured against loss or damage at the time when the rights of action arose, the judgment creditor or the successor in interest is entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant applied to the satisfaction of the judgment. If the judgment is not satisfied within thirty days after it is rendered, the judgment creditor or the successor in interest, to reach and apply the insurance money to the satisfaction of the judgment, may file a supplemental petition in the action in which said judgment was rendered, in which the insurer is made new party defendant in said action, and whereon service of summons upon the insurer shall be made and returned as in the commencement of an action at law. Thereafter the action shall proceed as to the insurer as in an original action."

It is the contention of appellee that the trial court erred when it concluded that the previous judgment finding that Richardson's acts were negligent rather than intentional barred relitigation of that issue. In support of this position, appellee cites the language of R.C. 3929.06 that actions brought thereunder "* * * proceed as to the insurer as in an original action." Appellee misconceives the purposes of R.C. 3929.06. Such actions, by their nature, are supplemental to the initial proceeding establishing the liability of the tortfeasor. It would make little sense to provide for a "supplemental" action if the acts of the insured were not determined in the previous proceeding. Thus, as to the underlying *tort claim* the prior action operates to preclude relitigation of the liability of the tortfeasor (collateral estoppel).

Appellee further maintains that the doctrine of collateral estoppel is not applicable because appellee was not a party to the prior proceeding. However, the doctrine does not apply merely to those who were parties to the proceeding. It applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity. See *Wright* v. *Schick* (1938), 134 Ohio St. 193, 12 O.O. 6, 16 N.E. 2d 321; *Hainbuchner* v. *Miner* (1987), 31 Ohio St. 3d 133, 137, 31 OBR 292, 295-296, 509 N.E. 2d 424, 427.

Inasmuch as appellee possessed a contractual relationship with Richardson and, in any event, could have intervened in the prior proceeding, it is precluded from relitigating the issue of Richardson's mental state.

Appellee contends, however, that an ethical dilemma would arise on the part of counsel retained by an insurance company but representing the tortfeasor in the prior action. The dilemma concerns a conflict between the interest of the tortfeasor in characterizing his acts as, at worst, negligent (thereby securing insurance proceeds and avoiding punitive damages) and the interest of the insurance company in characterizing the acts as intentional (thereby foreclosing coverage). This dilemma is not necessarily inevitable. The insurance company may legitimately decline to defend where it believes in good faith that its insured acted intentionally. It may nevertheless enter the action and participate as a third-party defendant so as to defeat any liability on its part (*i.e.,* by demonstrating that the acts of the insured/tortfeasor were intentional).

It is this opportunity that must be seized. Otherwise, whether seized or not, the opportunity to litigate in the original action will preclude relitiga-

tion of liability in the supplemental proceeding.

Appellee also contends that the trial court erred in refusing to admit into evidence (1) the related criminal conviction of Richardson; (2) the hospital report relating to appellant's injuries; and (3) the deposition of Dr. Meagher relative to appellant's injuries. Inasmuch as this evidence concerned the mental state of Richardson (*i.e.*, that his acts were intentional), it is foreclosed by the prior determination in the initial civil suit that Richardson acted negligently.

We therefore conclude that where a determination is made in an initial action instituted against a tortfeasor relative to his culpable mental state, collateral estoppel precludes relitigation of the determination in a subsequent proceeding brought against his insurer pursuant to R.C. 3929.06.

## II

The trial court, while holding that the prior proceeding was *res judicata* on the issue of Richardson's mental state, nevertheless directed a verdict in favor of appellee relative to insurance coverage. Thus, even though the circumstances of the underlying tort were previously decided, the trial court implicitly held that the issue of the contractual obligation of appellee to Richardson and, in turn, to appellant as the injured party was reserved for the supplemental proceeding. The disposition of the present action turns on the language of the insurance contract. It provides in relevant part:

"WHEN AND WHERE COVERAGE APPLIES

"When Coverage Applies

"The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

"* * *

"SECTION I—LIABILITY—COVERAGE A

"* * *

"We will:

"1. pay damages which an *insured* becomes legally liable to pay because of:

"a. *bodily injury* to others, and

"b. damage to or destruction of property including loss of its use,

"caused by accident resulting from the ownership, maintenance or use of *your car*; and

"2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit." (Emphasis *sic*.)

It was the conclusion of the trial court that reasonable minds could only come to the conclusion that the "bodily injury" sustained by appellant was not the result of an "accident resulting from the ownership, maintenance or use of the insured['s] vehicle." The court of appeals agreed with this analysis. Both the trial and appellate courts held that *Kish* v. *Central Natl. Ins. Group of Omaha* (1981), 67 Ohio St. 2d 41, 21 O.O. 3d 26, 424 N.E. 2d 288, is determinative of the issues involved in the case *sub judice*. *Kish* addressed coverage under an uninsured motorist policy. In that case, plaintiff's decedent was killed by a shotgun fired by a motorist who collided into the rear of the decedent's automobile. While we concluded in *Kish* that recovery could be had under the policy irrespective of the mental state of the tortfeasor (intentional or negligent), the denial of such recovery was upheld because the policy language specifically conditioned recovery upon an accident arising "out of the ownership, maintenance or use of the uninsured vehicle." *Id.* at 49-52, 21 O.O. 3d at 31-33,

424 N.E. 2d at 293-295. The focus of the holding was not the mental state of the tortfeasor but the instrumentality causing death. Accordingly, had the death in *Kish* resulted from the intentional ramming from behind of decedent's automobile by the tortfeasor's vehicle, recovery would have been allowed. *Id.* at 51, 21 O.O. 3d at 32, 424 N.E. 2d at 294.

The *Kish* court held that the mental state of the tortfeasor was irrelevant in an action upon an uninsured motorist policy because the uninsured motorist statute did not condition recovery upon a finding of negligence on the part of the tortfeasor. Additionally, we observe that the public policy considerations which prevent a tortfeasor from insuring against his intentional acts are not present since the insured was the victim and not the tortfeasor. Accordingly, when viewing the case from the perspective of the insured, the incident would be "accidental" whether personal injury is the result of an intentional or negligent act.

*Kish* acknowledges that prior cases involving indemnity policies quite properly focused upon the mental state of the tortfeasor and foreclosed recovery in the event of an intentional act. *Id.* at 46-48, 21 O.O. 3d at 29-30, 424 N.E. 2d at 292-293. See *Commonwealth Cas. Co.* v. *Headers* (1928), 118 Ohio St. 429, 161 N.E. 278; and *Rothman* v. *Metropolitan Cas. Ins. Co.* (1938), 134 Ohio St. 241, 12 O.O. 50, 16 N.E. 2d 417. This issue is not presented in the instant appeal, however, since the tortfeasor has been previously determined to have acted in a negligent rather than an intentional manner. Thus, the central question is whether the determination regarding insurance coverage is subject to a directed verdict or is a question more properly reserved for the jury. Under the facts of this case, we conclude that the issue was properly resolved by directed verdict. In *Kish, supra,* this court held that the trial court did not err in granting a motion for summary judgment based on facts and contract language nearly identical to those presented by the case at bar.

Accordingly, it is our conclusion that bodily injury to an insured resulting from the discharge of a firearm by a tortfeasor is not encompassed within the terms of a policy of insurance which limits coverage to injuries "caused by accident resulting from the ownership, maintenance or use of" an automobile.

The judgment of the court of appeals is therefore affirmed.

*Judgment affirmed.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., concur in part.

WRIGHT, J., concurring in part. I concur in the judgment rendered today and in paragraph two of the syllabus. However, I simply cannot join in the application of the doctrine of collateral estoppel announced in paragraph one of the syllabus.

The situation giving rise to the collateral estoppel question raised in this case is certainly not uncommon. An insurer assumes the duties of defense and indemnification provided that the insured's conduct and the injuries sustained fall within the coverage of the policy. Specifically excluded from coverage are injuries resulting from the insured's *intentional* conduct. The insured causes injury to a third person under circumstances suggesting that the insured's conduct was in fact intentional. When the injured party sues the

insured, alleging negligence as well as intentional misconduct, the insurer is placed in an obvious dilemma. To best protect the interests of the insured, the insurer should take the position that the insured is not liable at all, or that his conduct was at worst negligent (to protect the insured from potential liability for punitive damages if the insured's conduct is found to be intentional). On the other hand, assuming the insured is culpable under some theory, the *insurer's* interest, *i.e.,* avoiding its own liability, would be best served by a finding that the insured's conduct was intentional and not merely negligent, and thus not covered by the policy.

The majority concedes that an insurer placed in this dilemma "may legitimately decline to defend where it believes in good faith that its insured acted intentionally." However, the majority also rules that the insurer must seize its "opportunity" to enter the suit between the injured party and the insured and there present its case that the acts of the insured were intentional. Evidently the majority is of the view that an insurer placed in the situation described above may intervene as of right pursuant to Civ. R. 24(A).[1] However, imagine the surprise of the insured who finds that his insurer, which has already refused to defend him, has entered the suit *against* him and is assisting the injured party in establishing the insured's liability. The prejudice to the insured in this situation is obvious, and a cumbersome separation of issues in such an unduly complex lawsuit is unlikely to eliminate the problem.[2]

One avenue open to the insurer, and certainly one that the insured would prefer, is the filing of a declaratory judgment action. In *Preferred Risk Ins. Co.* v. *Gill* (1987),

---

[1] Civ. R. 24(A) provides:

"Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[2] At least one commentator has suggested that the "best" solution would be to permit or require the insurer to intervene in the underlying tort action where its interests are adverse to those of the insured. Note, The Effect of Collateral Estoppel on the Assertion of Coverage Defenses (1969), 69 Colum. L. Rev. 1459, 1473-1474. The author concedes that this approach has the disadvantage that "[t]he insurer's claim may tend to injure the insured with regard to his liability to the plaintiff[,]" *id.* at 1473, but suggests that this problem can be avoided by separating the trial into two parts, the first to determine the insured's liability to the injured party, and the second to determine the insurer's contractual duties to defend and indemnify. *Id.* at 1473-1474. Even under this approach, however, the question of whether the insured's conduct was negligent or intentional may be litigated twice, as the insurer, who did not participate in the first part of the lawsuit, is not precluded from asserting the policy exclusion for intentional acts in the second part. Thus, in my view, the "intervention" alternative espoused by that author and adopted by the majority unduly complicates the injured party's tort action with no corresponding benefit in terms of judicial economy.

An additional objection to the intervention approach is that the jury will necessarily be made aware of the fact that the defendant is insured, a situation preferably avoided for obvious reasons.

30 Ohio St. 3d 108, 30 OBR 424, 507 N.E. 2d 1118, paragraph one of the syllabus, we held:

"An insurer may maintain a declaratory judgment action under R.C. Chapter 2721 for purposes of establishing its rights and obligations under a contract of insurance. The insurer, if proceeding in good faith, is entitled to bring such an action for purposes of adjudicating its duty to defend and/or indemnify its insured in a tort action brought by a third party, even where the underlying tort complaint alleges conduct within the coverage of the contract of insurance."

Unfortunately, however, a declaratory judgment action will solve the potential collateral estoppel problem only where such action is instituted and determined *before* the injured party's lawsuit against the insured is concluded. The insurer may be able to get that lawsuit stayed pending the outcome of the declaratory judgment action. However, where the trial court in its discretion declines to grant such a stay, the insurer is in a race with the clock and can only hope to obtain a declaratory judgment before the injured party's tort action is concluded. Meanwhile, of course, the insured is in exactly the opposite position: to avoid any collateral estoppel effect of a finding in the declaratory judgment action that his conduct was intentionally tortious, the insured will want the tort action against him to be concluded first.

Regardless of the above alternatives and their inherent inadequacies, I believe the majority opinion embraces a simple misapplication of the doctrine of collateral estoppel. It is true that as a general matter an insurer which defends its insured or has an opportunity to provide such defense is bound by the result obtained. This rule is based on the assumption, accurate in most cases, that the interests of the insured and the insurer are substantially identical. However, where the interests of the insured and the insurer are in fact adverse, the premise underlying the application of collateral estoppel is simply lacking. Such adversity of interest exists where, as here, the insured wants his conduct to be found negligent at worst, while the insurer can avoid all liability under its policy if the insured's conduct is found to be intentional.

Numerous cases have considered and rejected the use of collateral estoppel in exactly this situation, *i.e.,* where the injured party has alleged that the insured's conduct was negligent and, alternatively, intentional, and the trial court found the insured liable solely on the negligence ground. See, *e.g., Snodgrass* v. *Baize* (Ind. App. 1980), 405 N.E. 2d 48. Of course, an easier case is presented where the injured party's complaint alleges liability solely based on negligence, though the facts suggest that the insured's conduct might have been intentional. In this situation, since the question of whether the insured acted intentionally would never be presented in the first action and thus would never be "determined" therein, an insurer is not estopped from litigating the intentional act exclusion in an action on a supplemental petition by the injured party, a declaratory judgment action by the insurer, or an indemnification action by the insured. See, *e.g., Hartford Ins. Group* v. *Fourth Judicial Dist. Ct. of Colo.* (Colo. 1981), 625 P. 2d 1013; *Kelly* v. *Cherokee Ins. Co.* (Tenn. 1978), 574 S.W. 2d 735.

*Snodgrass, Hartford,* and *Kelly* adopted the rationale set forth in *Farm Bur. Mut. Auto. Ins. Co.* v. *Hammer* (C.A. 4, 1949), 177 F. 2d 793. The insured in *Hammer* caused a collision which killed or injured five persons, and he was convicted of second

degree murder. However, in civil suits brought against the insured it was determined that the injuries were accidental. The insurer had withdrawn from the civil suits and provided no defense. In a subsequent declaratory judgment action, the insurer argued that the injuries were beyond the scope of the policy because they resulted from the intentional conduct of the insured. The insured moved for summary judgment on the ground that the insurer was estopped from arguing that the insured's acts were intentional, since the fact that these acts were merely negligent had been determined in the preceding civil suits. The trial court granted the motion, and the court of appeals reversed. Rejecting the insured's collateral estoppel argument, the court reasoned:

"* * * The underlying purpose of the [collateral estoppel] doctrine is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented. The indemnitor may not be under a contractual obligation to defend, but if he fails to assume the burden of the defense he takes the risk for he is bound by any judgment against the indemnitee where their interests in the defense of the suit are identical.

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance. * * *" *Id.* at 799-800.

Thus, the court in *Hammer* recognized that the general rule binding insurers to judgments against their insureds is inappropriate where the interests of the insurer and the insured are not identical. See, also, Windt, Insurance Claims and Disputes (2 Ed. 1988) 330-334, Section 6.20.[3] This is consistent with the view expressed in 2

---

[3] That section provides in part:

"As a general rule, once a final judgment has been entered on behalf of the party suing the insured, the insurer may not, absent collusion, reopen the factual or legal basis of the judgment when the insured makes a coverage claim. This is true whether or not the insurer defended the insured and, if it did not defend, whether or not such refusal was justified. * * *

"* * * The proper rule, * * * recognizing well-settled principles of indemnity law, is that the insurer is collaterally estopped if it was duly notified of the pendency of the suit and given full opportunity to control the insured's defense.

"* * *

"There is, however, a significant exception to the foregoing rule. * * * [I]n the event the interests of the company and the insured in defending the original action conflict, the insurer does not have the right to control the insured's defense. Under those circumstances, therefore, if the insurer does not in fact so assume the insured's defense, it should not be bound by any resulting adverse judgment.

"The rationale for that exception to the

Restatement of the Law 2d, Judgments (1982), Section 58, which states that an insurer in this situation would be precluded from relitigating only those issues as to which there was no conflict of interest between itself and the insured.[4]

There is some support for the contrary position. In *Miller* v. *United States Fid. & Cas. Co.* (1935), 291 Mass. 445, 197 N.E. 75, the court did hold that an insurer, whether or not it defends the insured, is bound by the resulting judgment as to all issues actually litigated and determined, including whether the insured's conduct was negligent or intentional. However, this view ignores the fact that where the interests of the insured and the insurer conflict, the insurer as a practical matter does *not* have the opportunity to adequately protect its interests. As succinctly stated in *State Farm Fire & Cas. Co.* v. *Garrity* (C.A. 4, 1986), 785 F. 2d 1225, 1227: "*Miller* is fatally flawed * * * because it sacrifices the insurance company's right to a day in court on the altar of judicial economy. * * *" Thus, the reasoning in *Miller* was expressly rejected in *Hammer, supra,* at 799, and numerous subsequent cases that have considered both decisions in a similar context have concluded that *Hammer* represents the preferred view. See *Snodgrass, supra,* at 52; *Kelly, supra,* at 738. But, see, 1B Moore's Federal Practice (2 Ed. 1988) 448-449, Paragraph 0.411[6], fn. 19.[5]

---

general rule is obvious. The underlying purpose of the collateral estoppel doctrine, as applied in indemnity situations, is to obviate the delay and expense of two trials on the same issues—one by the injured party against the indemnitee and the other by either the indemnitee or the injured party against the indemnitor. That result is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented. This necessarily assumes, however, that the interests of the parties to the contract of indemnity are identical with regard to the injured person's claim. As a result, in the absence of such an identity of interest, the collateral estoppel doctrine should not apply." (Footnotes omitted.)

[4] 2 Restatement of the Law 2d, Judgments (1982) 89, Section 58, provides:

"Effect of Judgment Against Indemnitee on Indemnitor Who Has Independent Duty to Defend Indemnitee

"(1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

"(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

"(b) The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee *as to which there was no conflict of interest between the indemnitor and the indemnitee.*

"(2) A 'conflict of interest' for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not." (Emphasis added.)

[5] Professor Moore and his co-authors prefer *Miller* over *Hammer,* though they recognize that "an insurer in the *Hammer* situation is on the horns of a dilemma, insofar as the action against the insured is concerned * * *." 1B Moore's Federal Practice (2 Ed. 1988) 449, Paragraph

I believe that to resolve this issue we should follow 2 Restatement of the Law 2d, Judgments (1982), Section 58, and adopt the rationale of *Hammer, supra,* and the numerous cases in accord therewith. Accordingly, I would hold that where there is a conflict of interest between an insured and its insurer, the insurer will not be precluded from relitigating coverage defenses in a supplemental petition under R.C. 3929.06, regardless of whether questions relevant to those defenses have been determined in a prior action between the injured party and the insured. More specifically, I would hold that where a tort action between the injured party and the insured has determined that the insured's conduct was negligent and not intentional, the insurer in a subsequent action is not estopped from arguing that the insured's conduct was intentional and thus is not covered by the policy. In the present case, then, since the interests of Richardson (the insured) and State Farm (the insurer) were in conflict, and since neither State Farm nor Richardson was able to protect State Farm's interest in the tort action brought by Bayless, State Farm should not be precluded from arguing that the injuries suffered by Bayless are outside the coverage of the policy because they resulted from the intentional acts of Richardson.

Were the collateral estoppel issue the only matter before this court, I would remand this cause to the trial court for proceedings consistent with the analysis above. However, the majority ultimately finds that Bayless's injuries are not covered under the policy because they did not "arise out of the ownership, maintenance or use" of Richardson's vehicle. Because I agree with this conclusion, and because this conclusion renders the collateral estoppel question moot, I concur in paragraph two of the syllabus and in the judgment.

MOYER, C.J., and HOLMES, J., concur in the foregoing opinion.

---

0.411[6], fn. 19. However, they argue that "the insurer is not entirely without a remedy: a suit against the insured and the injured claimant for a declaratory judgment of noncoverage, *prior to rendition of judgment in the suit against the insured,* may be entertained at the discretion of an appropriate court. * * *" (Emphasis *sic.*) *Id.* As noted earlier, this court held in *Preferred Risk Ins. Co.* v. *Gill, supra,* that an insurer may bring a declaratory judgment action in this situation. However, in light of the discretionary nature of declaratory judgment actions, and because this approach necessarily requires a "race to the courthouse," I believe it would be an inadequate solution to the insurer's collateral estoppel problem.