OPINION
Plaintiff-appellant, Carol Miller, appeals the judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellees, Federal Insurance Company ("FIC"), Rollins Leasing Corp. ("Rollins Leasing"), and Rollins Dedicated Carriage Services, Inc. ("DCS"). For the following reasons, we reverse as to FIC but affirm as to Rollins Leasing and DCS.
On February 7, 1995, appellant, an employee of PetsMart, was injured on the job while unloading a tractor-trailer at a PetsMart retail store. The trailer had been "double stacked" with pallets of cat food, stacked one on top of the other. The pallets had not been tied-down and, as a result, had shifted during transit. When appellant informed her supervisors that any effort to move the pallets would cause bundles of cat food to fall to the floor, she was ordered to unload the trailer anyway. In the process, appellant was struck by approximately four hundred pounds of cat food that fell from one of the pallets.
The trailer containing the cat food had been loaded and sealed at a warehouse by employees of ODW Logistics, Inc., f.k.a. Ohio Distribution Warehouse ("ODW") under the supervision of PetsMart managers. The trailer was then picked up and transported to the PetsMart facility by a driver, employed by DCS, a common carrier subject to Interstate Commerce Commission ("ICC") regulations including the Federal Motor Carrier Safety Regulations ("FMCSR"). Pursuant to an agreement between DCS and PetsMart, DCS provided drivers to haul PetsMart's freight in vehicles owned by Rollins Leasing. On February 7, 1995, the trailer was left by the driver at the PetsMart facility for unloading by PetsMart employees, including appellant.
By way of a complaint filed October 22, 1996, an amended complaint filed December 20, 1996, and a second amended complaint filed January 14, 1997, appellant alleged claims against FIC, Rollins Leasing, and DCS. In particular, appellant alleged an uninsured motorist claim against FIC, the insurer of PetsMart under a policy of motor vehicle insurance. Appellant alleged negligence claims against Rollins Leasing and DCS on the grounds that: (1) their employee, the driver, had a duty to inspect the sealed load hauled on the day in question; (2) that the driver had a duty to report negligent loading practices he had previously witnessed by ODW employees; and (3) that Rollins Leasing and/or DCS were liable for the negligent loading of the trailer because the ODW employees were statutory employees of Rollins Leasing and/or DCS.
On October 9, 1997, FIC filed a motion for summary judgment arguing that appellant was not entitled to any uninsured motorist coverage because: (1) she was not an "insured" under the policy; and (2) she was not injured by an accident resulting from the ownership, maintenance, or use of an uninsured vehicle. By decision and entry filed December 18, 1997, the trial court ruled that, based upon this court's decision in McGirr v. Roth (Apr. 17, 1997), Franklin App. No. 96APE08-1115, unreported (1997 Opinions 1337), appellant was not an insured for purposes of uninsured motorist coverage under her employer's policy. As such, the trial court granted FIC's motion for summary judgment.
On July 29, 1997, Rollins Leasing and DCS moved for summary judgment, which was initially denied by the trial court on November 19, 1997. Upon motion, the trial court reconsidered its previous decision and, on October 5, 1998, granted summary judgment to Rollins Leasing and DCS. In so doing, the court ruled that the employees of ODW were not the statutory employees of Rollins Leasing or DCS, that the driver had no duty to inspect the already sealed trailer on February 7, 1995, and that the driver had no duty to report any negligent loading practices he may have previously witnessed.
Appellant timely appealed raising the following four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN REFUSING TO FIND THAT THE PROCESS OF LOADING OR UNLOADING OF A MOTOR VEHICLE IS WITHIN THE SCOPE OF "OPERATION AND USE" OF A MOTOR VEHICLE; THAT CAROL MILLER IN THE PROCESS OF UNLOADING A SEMI-TRACTOR TRAILER QUALIFIED AS INSURED COVERED BY A POLICY OF INSURANCE WITH DEFENDANT FEDERAL INSURANCE, AND SINCE SHE STATES SHE WAS INJURED AS A RESULT OF THE NEGLIGENCE OF PETSMART SUPERVISORS WHO NEGLIGENTLY ORDERED THE UNSAFE LOADING OF THE TRACTOR TRAILER, IF THE JURY SO FINDS SHE THEN QUALIFIES FOR UNINSURED MOTORIST BENEFITS FOR ALL INJURIES RECEIVED AS A DIRECT AND PROXIMATE RESULT OF THE NEGLIGENCE OF PETSMART SUPERVISORS WHO NEGLIGENTLY ORDERED THE UNSAFE LOADING OF THE TRACTOR TRAILER.
 Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN REFUSING TO FIND CAROL MILLER QUALIFIED AS AN INSURED UNDER HER CORPORATE EMPLOYER'S POLICY OF INSURANCE WITH DEFENDANT FEDERAL INSURANCE, SINCE THIS POLICY OF INSURANCE WAS ISSUED TO A CORPORATION, AND CAROL MILLER WAS AN EMPLOYEE OF THE CORPORATION ACTING WITHIN THE SCOPE OF EMPLOYMENT, WHEN INJURED. LIABILITY COVERAGE UNDER THE INSURANCE CONTRACT, BROADLY DEFINED TO INCLUDE ALL EMPLOYEES OPERATING AN INSURED VEHICLE, CANNOT BE RESTRICTED IN UNINSURED MOTORIST COVERAGE TO LIMITED COVERAGE FOR THE CORPORATION ONLY, WHICH IS LESS IN SCOPE THAN LIABILITY COVERAGE OFFERED AND SOLD.
 Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN FAILING TO FIND, UNDER THE FEDERAL DOCTRINE OF STATUTORY EMPLOY-MENT, ADOPTED BY THE STATE OF OHIO IN THE WYCKOFF DECISION, THAT ALL PERSONS PARTICIPATING IN THE "OPERATION" OF AN ICC REGISTERED TRACTOR TRAILER ARE, FOR PURPOSES OF LIABILITY OF THE ICC MOTOR CARRIER, THE EMPLOYEES OF THE ICC MOTOR CARRIER, AND THAT SCOPE OF "OPERATION" INCLUDES LOADING THE ICC REGISTERED TRACTOR TRAILER.
 Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN FAILING TO FIND, CONSTRUING THE EVIDENCE MOST FAVORABLY FOR THE PLAINTIFF, MOST PARTICULARLY THE TESTIMONY OF DRIVER SZABO, OPERATION MANAGER JOHNSON, QUALITY CONTROL SUPERVISOR SCHUSTER, AND TRUCKING EXPERT PENROD, AND APPLYING THE STANDARD OF CARE FOR COMMON CARRIERS, WHICH IS A DUTY TO USE THE HIGHEST DEGREE OF CARE CONSISTENT WITH PRACTICAL OPERATION OF ITS BUSINESS, IN ORDER TO AVOID INJURY TO A PLAINTIFF, THAT REASONABLE MINDS COULD ONLY COME TO ONE CONCLUSION AND THAT CONCLUSION HAD TO BE THAT THE COMMON CARRIER DID NOT BREACH ITS DUTY TO EXERCISE THIS HIGHEST DEGREE OF CARE IN ITS OPERATION OF AN ICC REGISTERED VEHICLE, THEREBY PROXIMATELY CAUSING INJURY TO PLAINTIFF.
In all four of her assignments of error, appellant challenges the trial court's granting of summary judgment. Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:
 * * * [T]he pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc.v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citingHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,65-66.
Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it. CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42. See, generally,Dresher v. Burt (1996), 75 Ohio St.3d 280.
In her first and second assignments of error, appellant alleges that the trial court erred in granting summary judgment for FIC. In particular, appellant alleges that she is an insured for purposes of uninsured motorist coverage under her employer's motor vehicle insurance policy and that she was injured due to the ownership, maintenance, or use of an uninsured vehicle. We agree.
First, recent Ohio Supreme Court authority mandates a finding that appellant is an insured under her employer's policy in this case. FIC's policy defines an "insured" for purposes of uninsured motorist coverage to include:
1. You.
2. If you are an individual, any "family member."
 3. Anyone else "occupying" a covered "auto" you own or a temporary substitute for that covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
 4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
Recently, the Ohio Supreme Court addressed a nearly equivalent provision in an employer's insurance policy and held that an employee satisfies the definition of insured. See Scott-Pontzerv. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. In so doing, the court rejected the insurer's argument that the policy's use of "You" only referred to the corporate employer itself:
 Contrary to appellees' contentions, the policy language of the Liberty Fire policy can be interpreted to include company employees. Assuming arguendo that "you" does refer solely to Superior Dairy, this does not foreclose the inclusion of Pontzer as an insured under the policy. We note again, as we have often in the past, that uninsured motorist coverage, mandated by law pursuant to R.C. 3937.18, was designed by the General Assembly to protect persons, not vehicles. * * * It would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing under insured motorist insurance protection solely to a corporation without any regard to persons. See Ady v. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547. Rather, it would be reasonable to conclude that "you," while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees. Id. at 664.
Based upon this binding authority, we must likewise find that appellant is an insured under the FIC policy at issue here.
As they did below, FIC contends, in the alternative, that appellant is still not entitled to uninsured motorist coverage under the policy because she was not injured as a result of an accident with an uninsured motor vehicle. Uninsured motorist coverage under the FIC policy is provided as follows:
 We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" because of "bodily injury" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."
Here, FIC does not argue that the trailer was not an "uninsured motor vehicle." Rather, FIC contends that appellant was not injured by an accident resulting from the ownership, maintenance, or use of that vehicle. As stated by FIC, appellant "was injured when large bags of cat food fell on her as she unloaded an immobile freight trailer which was parked at a receiving dock and which had been unhitched from the trailer which transported it to the receiving dock." (Merit brief of FIC at 13-14.) In so doing, FIC primarily relies upon Kish v. CentralNat. Ins. Group (1981), 67 Ohio St.2d 41, and its progeny for the proposition that appellant's injury must be caused by the uninsured vehicle itself.
In Kish, supra, the Ohio Supreme Court addressed whether uninsured motorist coverage applied when the insured was shot and killed by an uninsured driver after the uninsured motorist had struck the insured's vehicle from behind. Like the policy at issue in the case at bar, the policy in Kish limited coverage to injuries caused by accident and "arising out of the ownership, maintenance, or use of the uninsured vehicle." Id. at 49. Rejecting a "but for" analysis to determine whether coverage applied under this language, the court ruled that the "relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." Id. at 50. Applying this test, the court held that the tortfeasor's act of shooting a gun at the insured "was an intervening cause of injury unrelated to the use of the vehicle."Id.
In Howell v. Richardson (1989), 45 Ohio St.3d 365, the Ohio Supreme Court applied Kish in the context of an automobile liability insurance provision limiting coverage to injury caused by accident resulting from the "`ownership, maintenance or use'" of the car. In Howell, the tortfeasor accidentally fired a weapon from his car into another vehicle causing injury to one of its occupants. Id. at 366. Noting that the focus in Kish was the "instrumentality causing death" and not the mental state of the tortfeasor, the court ruled that, like in Kish, liability coverage did not apply under the facts of the case.
In Lattanzi v. Travelers Ins. Co. (1995), 72 Ohio St.3d 350, the Ohio Supreme Court again addressed the issue in the context of uninsured motorist insurance and again found no coverage. In Lattanzi, the insured was abducted at gunpoint by an uninsured motorist and taken by vehicle to an unknown house where she was raped. Id. at 351. Discussing its prior decisions inKish and Howell, the court again reiterated that a "but for" analysis was inappropriate, that the mental state of the tortfeasor was not relevant, and that "it is how [the tortfeasor] causes the injury that is important." Id. at 352-353. Thus, the court noted that at the time the tortfeasor removed the insured from the vehicle, the insured had not yet suffered an injury and, as such, her injuries were "not achieved through use of the automobile as an instrumentality." Id. at 353. Rather, "[o]nce leaving the automobile, the assailant's own brutal, criminal conduct became the only relevant instrument of injury." Id.
We find, however, that none of the cases discussed above mandates a finding of no coverage here. First, contrary to that suggested by FIC, Ohio law does not require that the uninsured vehicle itself be the injury causing agent before Uninsured Motorist coverage ("UM coverage") can apply. See, e.g., Bakos,supra (UM coverage applied when insured was injured when assaultedby passenger who sought to gain control over car and when insured was forced out of the car onto the street); State Auto. Mut. Ins.Co. v. Rainsberg (1993), 86 Ohio App.3d 417 (UM coverage applied to insured who was injured when his car struck passengers of an uninsured stalled vehicle who were outside of the uninsured vehicle attempting to divert traffic from it); Buckeye Union Ins.Co. v. Carrell (1991), 77 Ohio App.3d 319 (UM coverage applied to injuries sustained to employee supervising test drive of used vehicle when driver and other passenger commandeered vehicle, assaulted employee, and used vehicle to rob a bank); Grange MutualCasualty Co. v. Darst (Sept. 11, 1998), Miami App. No. 97 CA 59, unreported (UM coverage applied to death and injuries to children left in uninsured vehicle when children started fire with matches left in vehicle by its owner); see, also, Girgis v. State FarmMut. Auto. Ins. Co. (1996), 75 Ohio St.3d 302, paragraph one of syllabus ("R.C. 3937.18 and public policy preclude contract provisions in insurance policies from requiring physical contact as an absolute prerequisite to recovery under the uninsured motorist coverage provision"). Thus, the fact that appellant here was physically struck by falling bundles of cat food instead of the uninsured vehicle itself does not alone render appellant's injuries outside the scope of UM coverage.
Moreover, as noted by our colleagues at the Eighth District Court of Appeals, in each of the cases in which the Ohio Supreme Court found no coverage, "the chain of events that resulted in the injuries was broken by an event or events unrelated to the use of the vehicle." Bakos v. Insura Prop. Cas. Ins. Co. (1997), 125 Ohio App.3d 548, 555. For example, inKish and Howell, the tortfeasor's act of shooting the victim (either intentionally or accidentally) was an intervening cause unrelated to the use of the vehicle. In Lattanzi, the insured's bodily injuries resulted from the rape after she left the car and, thus, were unrelated to the use of the vehicle itself.
Similarly, in Carter v. Burns (1993), 90 Ohio App.3d 787
(another case relied upon by FIC) the insured was injured when he slipped and fell on icy ground while he was chasing the uninsured motorist on foot after both had exited their respective vehicles following an accident. As such, "the chain of events resulting in the accident which caused [the insured's] injuries was broken by the intervention of an event unrelated to the operation or use of the uninsured vehicle." Id. at 792.
Here, on the other hand, the chain of events resulting in the accident which caused appellant's injuries was not broken by any event unrelated to the use of the trailer. Loading, transporting, and unloading freight are all components of a freight trailer's use. Here, appellant alleges that her injuries resulted from PetsMart's negligent acts related to loading thetrailer at the warehouse and/or from PetsMart's ordering her tounload the trailer after being informed of its dangerous condition. In either case, PetsMart's alleged liability is related to its use (or more accurately, misuse) of the trailer in hauling its freight. Thus, we do not see how the freight falling in the trailer here can be considered an intervening event unrelated to the uninsured vehicle's use. Cf. Muncy v. AmericanSelect Insurance Company (June 30, 1998), Franklin App. No. 97APE09-1226, unreported (1998 Opinions 2369) (where independent, third-party testimony indicates that the negligence of an unidentified vehicle caused debris to be deposited in the roadway and that debris caused harm, a claim for UM coverage may go forward).
We find, therefore, that appellant is an insured under the FIC policy and that appellant's claims for damages resulted from PetsMart's ownership, maintenance or use of an uninsured vehicle. As such, the trial court erred in granting summary judgment for FIC. Appellant's first and second assignments of error are well-taken and are sustained.
In her third assignment of error, appellant challenges the trial court's determination that Rollins Leasing and DCS were not vicariously liable as the statutory employer of the ODW warehouse employees who negligently loaded the trailer. In particular, appellant contends that Wyckoff Trucking, Inc. v.Marsh Bros. Trucking Service, Inc. (1991), 58 Ohio St.3d 261, adopted the doctrine of statutory employment in Ohio, imposing liability on ICC carriers for all negligence by any person involved in the "operation" of the ICC tractor trailer. According to appellant, the ODW employees who negligently loaded the trailer in this case were involved in its "operation" and, therefore, DCS is their statutory employer. We disagree.
Nothing in Wyckoff stands for the broad proposition that ICC carriers are liable for the negligence of any person involved in the "operation" of the ICC vehicle. Rather, in Wyckoff, the Ohio Supreme Court ruled that federal regulation "creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carrier-lessee." Id. at paragraph three of the syllabus. (Emphasis added.) In so recognizing this "doctrine of statutory employment," the court followed the majority rule that "if the driver is negligent, the carrier-lessee is liable as a matter of law for accidents that occur while a lease is still in effect and its I.C.C. placards are displayed on the vehicle." (Emphasis added.) Id. at 265. No where in the opinion, however, did the court indicate that the doctrine would apply to any person involved in the "operation" of the vehicle.
Significantly, appellant cites no case from Ohio extending Wyckoff to persons other than the driver of the ICC vehicle, and our independent research has found none. While appellant does cite case law from other jurisdictions that appellant contends supports its position, none of these cases imposes liability on the carrier for the negligent acts of third-party employees in loading a tractor-trailer. See, e.g.,Johnson v. S.O.S. Transport, Inc. (C.A.6, 1991), 926 F.2d 516
(estate of driver allegedly killed by faulty brakes may seek recovery from ICC carrier for failure to meet safety regulations);Locicero v. Interpace Corp. (Wisc. 1978), 266 N.W.2d 423 (ICC regulations imposing liability on carriers to secure load safely did not prevent carriers from seeking contribution from shipper whose participation with the driver in loading the vehicle may have also been negligent). Here, the driver was not involved with the loading or unloading of the freight. Rather, as noted above, the trailer was loaded by ODW employees under the supervision of PetsMart managers and sealed before the driver arrived to pick it up.
As a result, we find that the trial court correctly ruled that Rollins Leasing and DCS were not the statutory employer of the ODW employees that loaded the trailer in this case. Appellant's third assignment of error is not well-taken and is overruled.
In her fourth assignment of error, appellant challenges the trial court's determination that Rollins Leasing and DCS could not be vicariously liable for the failure of their driver to inspect the trailer's load on February 7, 1995, and/or for failure to report previously witnessed negligent loading practices by ODW employees. Again, we disagree.
First, while FMCSR Section 392.9(b) imposes certain duties on drivers to assure that a commercial motor vehicle's cargo is properly distributed and adequately secured, FMCSR Section 392.9(b)(4) specifically states such requirements do not apply to a driver of a sealed commercial vehicle who has been ordered not to open and inspect its cargo. Here, it is uncontroverted that the trailer was sealed before the DCS driver arrived to transport it to the PetsMart facility and that DCS drivers are prohibited by agreement with PetsMart from opening sealed trailers.
Second, appellant cites no authority in support of its contention that the DCS driver in question had a duty to report previously witnessed unsafe loading practices by ODW employees. Moreover, there is no evidence in the record indicating that the DCS driver witnessed any unsafe loading practices by ODW employees, on the day in question or previously.
We find, therefore, that the trial court did not err in ruling that Rollins Leasing and DCS could not be vicariously liable for the failure of their driver to inspect the sealed load or report previously witnessed unsafe loading practices. Appellant's fourth assignment of error is not well-taken and is overruled.
For the foregoing reasons, appellant's first and second assignments of error are sustained, and appellant's third and fourth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is hereby affirmed in part, and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part; cause remanded.
PETREE and BROWN, JJ., concur.