I must respectfully disagree with my colleagues decision in this case. I perceive no sound basis for finding an abuse of discretion by the trial court. There was nothing unreasonable, unconscionable or arbitrary about the trial court's denial of Great Midwest's motion to intervene as a third-party defendant a mere sixteen days before trial. The trial court properly found that the motion to intervene was "so untimely that trial of this matter would be delayed and the existing parties would be prejudiced by the granting of the motion." The extraordinary third-party defendant intervention sought herein for the "limited purpose" of submitting jury interrogatories and instructions has no precedent of which I am aware in Ohio law. The trial court correctly observed that Great Midwest was attempting this device as a substitute for a declaratory judgment action.
In the first place, the motion to intervene was clearly untimely. The intervenor/insurer was on notice at least five months earlier, (i.e., since October 21, 1998), when plaintiff tendered its amended complaint, that both dramshop and negligence in not providing security issues[1] were in the case. Great Midwest offers no explanation for its delay in waiting more than five months (until March 29, 1999) to move to intervene except to say "settlement remained a possibility." (Aplt's Reply Brf. at 6). This is no excuse when diligence required prompt action to protect what: the insurer now contends are vital interests. The majority recognizes that Great Midwest's "need to intervene did not arise until after Schmidlin filed its amended complaint," but, does not explain why a five-months period of grace should be allowed for the motion to intervene.
The Ohio Supreme Court considers the following factors applicable in granting or denying intervention respecting untimeliness as held in State ex rel. First New Shiloh Church v.Meager (1998), 82 Ohio St.3d 501, 503:
 Whether a Civ.R. 24 motion to intervene is timely depends on the facts and circumstances of the case. The following factors are considered in determining timeliness: (1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.
These factors focus on the promptness with which the intervenor must act after it knew or reasonably should have known that its interests required protection. The judgment on these issues is entrusted in the first instance to the sound discretion of the trial court which is intimately familiar with the history of the case, the role of the parties and the prospective disruption and delay occasioned to the conduct of a trial by an eleventh-hour interjection of new issues. If Great Midwest's "hoping for a settlement" is accepted as a valid excuse for not intervening promptly, these factors have lost all effect or meaning. Such an excuse likewise writes "timely application" out of Civ.R. 24(A) See Nunn v. Lockformer (Nov. 19, 1998), Cuyahoga App. No. 73505, unreported at 2-3 (no abuse of discretion to deny insurer's intervention made two months before trial where insurer "gave no reason for its delay in seeking intervention")
Aside from the untimeliness of the intervention, the majority suggests that the limited purpose of the intervention (i.e., filing jury interrogatories and/or jury instructions) might be inconvenient but would not be prejudicial or present difficulties in the conduct and management of the trial. On the contrary, such an approach ignores the dynamics of the trial proceedings itself and presents the interesting question of whether an intervenor/third-party defendant, such as Great Midwest, once permitted to participate as a matter of right, can be limited in the role it plays at trial, on the one hand, or shielded from identity to the jury on the other.
Many other interesting, perplexing and novel trial issues present themselves. E.g., will the plaintiff be entitled to call attention to the intervenor insurance company's role as a third-party defendant, a role which Great Midwest voluntarily sought? Will the jury be advised of intervenor's limited role? Will the insurer's counsel be entitled to participate and argue for answers to the interrogatories or instructions which limit its coverage to $25,000 rather than $300,000? Will the intervenor's counsel be entitled to participate in the charge conference, submit instructions and object to the court's instructions there or at trial? Intervention at this point places the insured's defense counsel in an untenable and compromising conflict situation. Will the insured's defense counsel argue for jury instructions and factual determinations leading to the greater coverage? Do the best interests of the insured suggest that defense counsel should concede liability on the other negligence counts in favor of the greater coverage? Will the insured be blamed for believing that her counsel is wearing two hats regardless of the outcome? It should be noted that the insured's counsel stood mute on the intervention issue in the trial court and has filed no brief on this appeal.
The extremely confusing and difficult questions posed by this belated intervention are more appropriately disposed of in the traditional declaratory judgment action and are not suitable for jury disposition unless all the cards are on the table. See Howellv. Richardson (1989), 45 Ohio St.3d 365, 369-71 (dissenting opinion which thoroughly discusses similar problems raised by coverage conflicts between the insurer and insured).
Although the majority places emphasis on the judicial economy of trying all these issues together, it does not have to contend with the management of a trial which raises these belated and confusing issues. That is why we should exercise caution in interfering with the discretion of the trial court in such cases. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." In re Jane Doe (1991). 57 Ohio St.3d 135, 137-38.
I also note that although Great Midwest's proposed jury interrogatories (seven in number) relate to separating liability for dramshop from the other negligence issues, they do not pinpoint the defendant's responsibility for damages allocable to one or the other. Interrogatory No. 7: If you find in favor of the plaintiffon any of her claims, state the amount of damage that you find * * * she is entitled to recover." In other words, the very reason Great Midwest advances for using the special interrogatories will be thwarted by failing to break down damages allocable between dramshop and other negligence liability. It is on just such unsettled vagaries as these that the trial court is better suited than we to judge the propriety of intervention.
Both the majority (Maj. Opn. at 12) and Great Midwest (Aplt's Reply Brf. at 8) make much of the alleged fact that Great Midwest has "at its disposal no other means of protecting its interests" except by intervention. This is lifting oneself by its own bootstraps. From the lawsuit's inception, or at least from the time of the amended complaint, Great Midwest could have brought a traditional declaratory judgment action under R.C. Chap. 2721 to determine the applicable liability coverage. Preferred Risk Ins.Co. v. Gill (1987), 30 Ohio St.3d 108, paragraph one of syllabus. In any event, the failure to act promptly was Great Midwest's fault and nobody else's. Tolerating such belated intervention will be an open invitation to insurers to wait until the eleventh hour to protect their interests by intervention. I find no precedent in the authorities for allowing an insurer to participate in the manner proposed.
Indeed, the plaintiff properly argues and the trial court judiciously found that it "will not facilitate Great Midwest's untimely attempt to `back door' a declaratory judgment action under the guise of a motion to intervene." At oral argument, Great Midwest's counsel was invited to cite any authority for the adoption of the procedure it espoused. Counsel admitted it had no such authority except Howell v. Richardson, supra. However, Howell
does not stand for the proposition that a "stealth" insurer can participate in the limited fashion proposed herein. I believe the trial court wisely exercised its discretion in denying the motion to intervene in this extraordinary fashion and would affirm its judgment on that issue.
[1] This was extremely relevant since dramshop coverage was apparently limited to $25,000 while other negligence coverage had limits of $300,000. It may be assumed that the insured's counsel (retained by Great Midwest from the outset of the litigation to defend D V) performed its duty of alerting the carrier to the amended complaint on or around October 21, 1998 when the amended complaint was tendered. Indeed, Great Midwest does not contend that it was not so advised.