BAKOS, Appellant,

v.

INSURA PROPERTY & CASUALTY INSURANCE COMPANY et al., Appellees.

[Cite as *Bakos v. Insura Prop. & Cas. Ins. Co.* (1997), 125 Ohio App.3d 548.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71949.

Decided Aug. 28, 1997.

*Peterson & Zelasko* and *Bradford D. Zelasko,* for appellant.

*Paul W. Ziegler,* for appellee Insura Property & Casualty Insurance Co.

*Weston, Hurd, Fallon, Paisley & Howley, John G. Farnan* and *Hilary S. Taylor,* for appellees St. Paul Fire and Marine Insurance Co.

Rocco, Judge.

Appellant appeals the granting of appellees' motions for summary judgment by the trial court. Because a genuine issue of material fact remains, the trial court incorrectly granted appellees' motions for summary judgment. We therefore reverse.

On November 14, 1985, appellant, Leslie K. Bakos, drove his father's automobile, a 1984 Buick Century, to Geauga Garden Towne, where appellant was employed. The automobile was insured under his father's policy, No. IA 9283987, with appellee Insura Property & Casualty Insurance Company ("Insura"). Appellant's father also held an additional Personal Liability Catastrophe Policy with appellee St. Paul Fire & Marine Insurance Company ("St. Paul").

While appellant was at work, an individual, later identified as Steven Bell, entered Geauga Garden Towne and asked for someone to drive him to his automobile, claiming it had become disabled. Appellant proceeded to drive Bell west on Route 322 in Geauga County, Ohio. While appellant was driving, Bell started to jab at appellant's head with what, appellant reported, "felt like a gun." Appellant later stated that he was getting dazed by the blows.

Bell then grabbed appellant by the neck and hair and pushed his head against the window. Bell proceeded to push appellant as he sought to gain control of the automobile. The entire incident lasted approximately thirty seconds. Appellant was forced out of the car and onto the street, where he was struck by an oncoming vehicle driven by Don J. Woods.[1] Appellant was thrown into a ditch and sustained serious injuries. Bell left the scene and was later apprehended and prosecuted.

Appellant corresponded with Insura and St. Paul, asserting claims to any available medical payments benefits and uninsured motorist coverage in effect at the time of the incident. Appellant also filed suit against Bell on October 6, 1986. On December 2, 1986, St. Paul denied appellant's claim. On November 11, 1987, Insura denied appellant's claim.

Appellant amended his complaint in November 1987 to add Woods as a defendant. On September 21, 1988, after determining that Woods was not liable to appellant for his injuries, appellant accepted a "nuisance value settlement" of $900 from Woods's insurance carrier. The trial court subsequently granted default judgment for appellant against Bell, awarding appellant $350,000 in compensatory damages and $100,000 in punitive damages.

---

1. It was unclear from the record whether the car was stopped or still moving when appellant hit the street.

Appellant filed the within action on November 18, 1994, seeking a declaration that the uninsured motorist provisions of the insurance policies with both Insura and St. Paul provide him with coverage for the injuries he sustained as a result of the above-described incident. All parties subsequently filed motions for summary judgment. On December 26, 1996, the trial court issued the following order:

"Plaintiff's injuries did not arise out of the operation, maintenance or use of an uninsured motor vehicle. Plaintiff's motion for summary judgment, requesting a declaratory judgment that coverage is available under either or both of defendants' insurance policies, is denied.

"Defendant Insura Prop. & Cas. Ins. Co.'s motion for summary judgment is granted.

"Defendant St. Paul Fire & Marine Ins. Co.'s motions for summary judgment is granted."

Appellant timely filed his appeal of the trial court's determination.

## I

In his sole assignment of error, appellant contends:

"The trial court erred in concluding, as a matter of law, that the injuries suffered by plaintiff–appellant did not arise out of the operation, maintenance or use of an uninsured motor vehicle, thereby denying access to the uninsured motorist coverages purchased from defendants–appellees."

Appellant argues that the trial court incorrectly granted summary judgment for appellees Insura and St. Paul, as he is entitled to uninsured motorist coverage under both policies.

Pursuant to Civ.R. 56(C), summary judgment is proper when no genuine issue as to any material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. See *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129. When reviewing a motion for summary judgment, the appellate court applies the same standard as that employed by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Therefore, this court will examine the parties' motions for summary judgment *de novo*.

### A. The Insura Policy

██  Initially, appellant argues that he is entitled to both medical payments coverage and uninsured motorist coverage pursuant to the Insura policy. However, appellant fails to allege any claims regarding the medical payments coverage in his complaint. He requests only a declaration that he "is an insured under the uninsured motorist provision of the policies with defendants" and that "the uninsured provision of the policies provide[s] coverage for the damages sustained as a result of the occurrence * * *."

Furthermore, there is nothing in the record that indicates that Insura refused appellant's request for medical payments coverage. The letter from Insura refusing to provide coverage to appellant stated only that there was "no legitimate uninsured motorist claim arising out of the circumstances of this incident." Therefore, as there is no dispute regarding the medical payments coverage apparent from the record, neither the trial court nor this court need address this issue. See *Stover v. Progressive Cas. Ins. Co.* (Mar. 25, 1988), Miami App. No. 87CA37, unreported, 1988 WL 35289 (the trial court did not err by failing to address allegations regarding medical payments coverage when the issue was not raised in the complaint and the declaratory judgment and counterclaim were based exclusively on the issue of uninsured/underinsured coverage).

Appellant argues that he is entitled to coverage pursuant to the uninsured motorist provision of the Insura policy. Appellant's insurance policy with Insura provides a maximum of $500,000 in uninsured motor vehicle coverage per accident. The policy includes the following language:

"We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be caused by accident arising out of the operation, maintenance, or use of an **uninsured motor vehicle.**"

██  An "insured" as defined in the uninsured motor vehicle portion of the policy includes "the first person named in the declarations" and "their relatives * * *." The first person named in the declarations is Leslie Bakos, appellant's father; thus, there is no question that appellant is an insured pursuant to the terms of the policy. Further, " '[w]hen an insured is intentionally injured or killed by another, and the mishap is as to him unforeseen and not the result of his own misconduct, the general rule is that the injury or death is accidentally sustained within the meaning of the ordinary accident insurance policy and the insurer is liable therefor in the absence of a policy provision excluding such liability. * * *' " *Kish v. Cent. Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 48, 21 O.O.3d 26, 30–31, 424 N.E.2d 288, 293, quoting *Nationwide Mut. Ins. Co. v. Roberts* (1964), 261 N.C. 285, 289, 134 S.E.2d 654, 658. Therefore, there is also

no question that the incident was an accident. Finally, once Bell, an uninsured motorist, took control of the automobile, the vehicle became an "uninsured motor vehicle." The remaining issue in dispute regarding uninsured motorist coverage is whether appellant's injury arose out of "the operation, maintenance or use of an uninsured motor vehicle."

The Ohio Supreme Court has previously interpreted a similar clause which required the insurer to pay bodily injury damages where the damages "result from an accident arising out of the ownership, maintenance, or use of the uninsured vehicles." *Kish, supra,* at 49, 21 O.O.3d at 31, 424 N.E.2d at 293. In *Kish,* the decedent was driving an insured vehicle. While he was stopped at a traffic light, his automobile was struck from behind. He got out of his car to confer with the other driver. The other driver got out of his automobile with a shotgun. As the decedent tried to get back into his vehicle, he was shot and killed by the other driver. *Kish, supra.*

The court noted that a "but for" analysis would be inappropriate in such circumstances. *Id.* at 50, 21 O.O.3d at 32, 424 N.E.2d at 294. "The relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." *Id.* The court acknowledged that the facts in *Kish* were different from a situation where the "injury causing instrumentality is the vehicle itself." *Id.* at 51, 21 O.O.3d at 32, 424 N.E.2d at 294. The court concluded that the decedent's uninsured motorist coverage did not apply. *Kish, supra.*

The court later applied its reasoning in *Kish* to *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 369, 544 N.E.2d 878, 882–883. In *Howell,* the insured was injured when the driver of another vehicle fired a gun at the windshield of the insured's vehicle following an altercation, shattering the windshield. The bullet lodged in the head of the insured. *Howell, supra.*

The *Howell* court first noted that the focus, according to *Kish,* was not on the mental state of the tortfeasor but on the instrumentality causing the death, again noting that the result in *Kish* would have been different had that death resulted from the intentional ramming from behind of the decedent's vehicle by the tortfeasor's vehicle. *Howell, supra,* at 369, 544 N.E.2d at 882–883, citing *Kish, supra.* Thus, the court held that a directed verdict had been properly entered, and the injury resulting from the discharge of a firearm by a tortfeasor is not covered as an injury that was "caused by accident resulting from the ownership, maintenance or use of" an automobile. *Id.*

This court has also previously addressed this issue. In *Minshall v. Motorists Mut. Ins. Co.* (1991), 72 Ohio App.3d 652, 595 N.E.2d 972, the insured was involved in a minor traffic accident with an unidentified vehicle that was occupied by three men. The insured was not injured in the collision. One of the

occupants of the unidentified vehicle, however, got out of his vehicle and punched the insured. The other occupants of the unidentified vehicle then joined the first man and they dragged the victim out of his automobile, assaulted, and robbed him. Reviewing *Kish,* the court initially noted that whether the victim was injured while inside or outside his automobile is a distinction without a difference, as the fact that the decedent in *Kish* was not occupying his vehicle was not relevant to the court's determination of the uninsured motorist claim. *Id.* at 654, 595 N.E.2d at 973. The court then held that, following *Kish* and *Howell,* they must "consider the instrumentality" which caused the insured's injuries. *Id.* at 655, 595 N.E.2d at 974. The court determined that the instrumentality was the occupants of the vehicle, and not the vehicle itself; thus, coverage was denied. *Id.*

Recently, the Ohio Supreme Court again addressed this issue. In *Lattanzi v. Travelers Ins. Co.* (1995), 72 Ohio St.3d 350, 650 N.E.2d 430, the insured was involved in a collision with an uninsured motorist. The uninsured driver then got out of his vehicle and forced his way into the victim's vehicle. He took over the operation of her automobile and drove her to a house, where he raped her. The insured did not allege that she suffered any injuries while she was in the vehicle. *Id.*

The relevant clause in the insurance policy in *Lattanzi* restricts coverage to bodily injuries which "arise out of the ownership, maintenance or use of the uninsured motor vehicle." *Id.* The *Lattanzi* court, applying both *Kish* and *Howell,* noted that "the state of mind of the tortfeasor is irrelevant—it is how he causes the injury that is important." *Id.* at 353, 650 N.E.2d at 432. Thus, the fact that the assailant intended to use the vehicle to transport the insured to a place where he could harm her was irrelevant. Moreover, while "the assailant may not have been able to achieve his nefarious purpose without the use of Mrs. Lattanzi's car, a 'but for' analysis is inappropriate." *Id.* at 353, 650 N.E.2d at 432, citing *Kish, supra,* at 50, 21 O.O.3d at 31–32, 424 N.E.2d at 294.

The court concluded that since the victim had not received any injuries at the time she was removed from the car, any subsequent injuries she received were not "through the use of the automobile as an instrumentality." *Lattanzi, supra,* at 353, 650 N.E.2d at 432. "Uninsured motorist provisions compensate for injuries caused by motor vehicles; they typically do not compensate for, or protect from, the evil that men do." *Id.*

As the previously decided cases illustrate, the relevant determination is the relationship between the uninsured automobile and the injuries sustained by the insured. The connection is insufficient where the injuries sustained by the insured were not caused by the uninsured motor vehicle. Therefore, when determining whether an injury arises out of the operation, maintenance, or use of the uninsured vehicle, the focus of the inquiry is on causation.

In the above-cited cases where the court found that the insured driver was not covered by the uninsured motorist provision of the policy, the chain of events that resulted in the injuries was broken by an event or events unrelated to the use of the vehicle. For example, in *Kish,* the court concluded that the intentional, criminal act of the murderer was an intervening cause unrelated to the use of the vehicle. *Kish, supra,* at 50, 21 O.O.3d at 31–32, 424 N.E.2d at 294. In *Howell,* the insured was injured by a bullet, also unrelated to the use of the vehicle. *Howell, supra.* In *Minshall,* the insured was injured when he was assaulted and dragged out of his vehicle; thus, his injuries were unrelated to his use of the automobile. *Minshall, supra.* Finally, in *Lattanzi,* all injuries to the plaintiff occurred after she left the car; thus, the injuries were also unrelated to the use of the vehicle. *Lattanzi, supra.*

However, a close examination of the facts of the action before us indicates that the instant action is distinguishable from the above-cited cases. In the action *sub judice,* appellant was in the act of operating the vehicle when Bell began to strike him with an object that "felt like a gun" and to attempt to take control of the vehicle. Bell took control and proceeded to push appellant out of the vehicle, forcing appellant onto the street, where he possibly sustained injuries caused by the motor vehicle itself. Furthermore, appellant was injured because he was pushed from his automobile onto a public roadway where he was struck by an oncoming automobile.

The facts now before this court are more similar to those in *Buckeye Union Ins. Co. v. Carrell* (1991), 77 Ohio App.3d 319, 602 N.E.2d 305. In *Buckeye,* an employee of Vaughan Motor Car Company was in charge of maintaining used automobiles. The employee accompanied a man on a test drive. The man picked up another man and the two of them assaulted the employee, injuring him. The employee subsequently sought coverage pursuant to Vaughan's insurance policy under the uninsured motorist provision. The court concluded that, "insofar as [the employee's] injuries occurred while he was a passenger of the vehicle, they were causally related to the use of the vehicle." *Id.* at 323, 602 N.E.2d at 307.

In *Kish, Howell, Minshall,* and *Lattanzi,* the courts determined there was an insufficient causative link between the uninsured vehicle and the injuries sustained by the insured driver. See *Kish, Howell, Minshall,* and *Lattanzi, supra.* In contrast, given the facts in the action *sub judice,* there is a much more direct connection between appellant's operation of the vehicle and the injuries appellant sustained. Reasonable minds may differ as to what extent the injuries appellant received while driving the car, while being pushed out of the car, and while being in the roadway and struck by an oncoming car arose out of the operation, use, or maintenance of the uninsured vehicle. A question of fact therefore remains as to

whether and to what extent appellant's injuries were causally related to the uninsured vehicle. Summary judgment was improperly granted for Insura.

■ Insura alternatively argues that, if this court determines that appellant's injuries did arise from the operation, maintenance, or use of the motor vehicle, the trial court's decision was proper, as summary judgment was warranted on other grounds. Insura contends that appellant failed to comply with the terms of his policy with Insura, thus discharging Isura's obligation to cover appellant pursuant to the policy.

First, appellant failed to exhaust the limits of the insurance coverage of Woods by accepting a settlement of $900 from Woods's insurance carrier. The Insura policy provides:

"If this Insurance provides a limit in excess of the amounts required by the applicable law where **your car** is principally garaged, we will pay only after all liability bonds have been exhausted by judgments or payments."

■ Ohio required minimum uninsured motorist coverage of $12,500; thus, appellant's policy clearly was in excess of the required amount. Insura maintains that appellant failed to exhaust the limit of Woods's policy. "An exhaustion clause is a valid precondition to the receipt of underinsured motorist coverage." *Motorists Mut. Ins. Co. v. Grischkan* (1993), 86 Ohio App.3d 148, 152, 620 N.E.2d 190, 193, citing *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 28, 521 N.E.2d 447, 453, paragraph five of the syllabus overruled by *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456; *Queen City Indemn. Co. v. Wasdovich* (May 31, 1990), Cuyahoga App. No. 56888, unreported, 1990 WL 71536.

Additionally, appellant's policy prohibits coverage where the insured settles with a possible tortfeasor without first obtaining permission from Insura. The policy provides that there is no uninsured motorist coverage "for any insured who, without our written consent, settles with any person or organization who may be liable for the bodily injury."

Furthermore, appellant failed to protect Insura's subrogation rights. As a condition of the policy, regarding uninsured motor vehicle coverage, the policy states, "we are subrogated to the extent of our payments to the proceeds of any settlement the injured **person** recovers from any party liable for the **bodily injury**."

■ A clause which protects rights of subrogation in an underinsured motorist provision is also valid and enforceable. *Grischkan, supra,* at 153, 620 N.E.2d at 193–194, citing *Bogan, supra,* at paragraph four of the syllabus.

In support of their contentions, Insura relies on *Prater v. State Auto Prop. & Cas. Ins. Co.* (May 20, 1996), Clermont App. No. CA95–12–087, unreported, 1996 WL 263635. In *Prater,* the plaintiffs' insurer denied the plaintiffs' claims for underinsured motorist coverage pursuant to their policy of insurance, first in December 1989 and then again in June 1992. The tortfeasor's insurer subsequently made an offer of settlement for which the plaintiffs executed complete releases in favor of the tortfeasor from any further liability related to the accident. The defendant was not notified of the settlement offer or of its acceptance prior to the settlement and release. *Id.*

The court determined that the plaintiffs' failure to notify the defendant of the execution of the release destroyed defendant's subrogation rights, thus constituting a breach of the insurance contract. *Id.* The court noted that the fact that the plaintiffs were twice denied coverage did not constitute a waiver of their insurance company's right to consent to the proposed settlement where plaintiffs had not provided notice of the settlement offer to the defendant, since the defendant lacked the necessary knowledge to waive its right to consent to settlement. *Id.,* citing *Miraldi v. Life Ins. Co. of Virginia* (1971), 48 Ohio App.2d 278, 281, 2 O.O.3d 235, 236–237, 356 N.E.2d 1234, 1235–1236.

However, this court is not required to follow the decision of the Clermont County Court of Appeals and declines to do so. It is unreasonable to require that an insured notify its insurance company of a proposed settlement after the insurance company has already informed the insured that it would not provide coverage pursuant to the insurance policy. In the matter *sub judice,* Insura informed appellant that his policy of insurance would not provide coverage; therefore, appellant was essentially on his own. It would be disingenuous, at best, for Insura to deny coverage to its insured and then claim that he was, nevertheless, required to comply with the requirements in his insurance policy.

This court finds persuasive the reasoning applied in *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19. In *Sanderson,* the insurer was given notice of a suit filed against its insureds but took the position that coverage was not available under the policies, and thus refused either to defend the suit or participate in any settlement negotiations. *Id.* at 583, 635 N.E.2d at 21.[2] The court initially noted that "[t]he duty to defend is of great importance to both the insured and the insurer." *Id.* at 586, 635 N.E.2d at 23, quoting *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266, 271. Therefore, the court found that "the insurer's failure to honor that obligation

---

**2.** The policy included a provision requiring that the company would defend any suit "even if any of the allegations of the suit are groundless, false or fraudulent * * *." *Id.* at 584, 635 N.E.2d at 22.

constitutes a material breach of the contract. This material breach relieves the insured of the duty to seek the insurer's assent to and participation in a proposed settlement." *Sanderson, supra.* Furthermore, "where an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud * * *." *Id.*

Although in the instant matter the issue is not Insura's duty to defend, Insura did notify appellant that it would not provide coverage, leaving appellant to fend for himself. As appellant may indeed be entitled to coverage under the policy, Insura's refusal to provide coverage constitutes a material breach. Thus, appellant logically could assume that he could make a reasonable settlement without prejudicing his rights under the contract. By its actions, Insura forwent its right to control the litigation.

Similarly, in *Ward v. Custom Glass & Frame, Inc.* (1995), 105 Ohio App.3d 131, 663 N.E.2d 734, an employee of defendant Custom filed an intentional tort action against it. Custom's insurer defended Custom under the policy's reservation of rights provision but gave notice that it would not pay if Custom was found to be liable. *Id.* The court noted:

"The purpose for paying premiums of insurance coverage is to buy peace of mind so that when accidents occur, the insured can trust that his insurance company will not renege on its agreement. When an insurance company refuses to provide coverage and at the same time seeks to maintain control of the same litigation, it disclaims liability to indemnify and creates a frustration of purpose." *Id.* at 137, 663 N.E.2d at 737.

In the instant action, appellant failed to exhaust the liability policy limit, failed to seek Insura's approval of the settlement proposal, and failed to protect Insura's subrogation rights. However, Insura had already made it clear to appellant that it would not be providing coverage to appellant for the uninsured motorist claim. To require that appellant still comply with the policy's provisions before accepting the settlement offer would be unreasonable; to do so would allow Insura to retain control of the matter even after it had refused appellant's claim.

Because a question of fact remains to be determined as to whether the incident arose out of the operation, maintenance, or use of the uninsured motor vehicle, and appellant was not required to comply with the terms of the insurance policy after Insura had already refused coverage pursuant to the policy, Insura's motion for summary judgment was improperly granted by the trial court.

Furthermore, the trial court determined that St. Paul's motion for summary judgment should also be granted on the grounds that appellant's injuries did not arise from the operation, maintenance, or use of an uninsured motor vehicle. As discussed above, a question of fact remains regarding this determination. Therefore, the trial court's order granting the motions for summary judgment of both Insura and St. Paul is reversed. This matter is remanded to the trial court so that the trier of fact may determine to what extent appellant's injuries incurred while in the automobile, while being forced out of the automobile, and while in the roadway after being forced out of the automobile arose from the operation, maintenance, or use of the automobile.

*Judgment accordingly.*

PATRICIA ANN BLACKMON, P.J., and SPELLACY, J., concur.