OPINION
{¶ 1} Plaintiff-appellant, Thomas Reichardt, appeals from a decision of the Clermont County Common Pleas Court granting summary judgment in favor of defendant-appellee, National Surety Corporation, with respect to Reichardt's complaint seeking a declaration that he was entitled to underinsured coverage under his employer's parent company's automobile insurance policy with National Surety.
 {¶ 2} On January 2, 1999, Reichardt was involved in an automobile accident with Carl Cash on Amelia Olive Branch Road, in Clermont County, Ohio. The accident was allegedly caused by Cash's negligent operation of his motor vehicle. Reichardt sustained injuries as a result of the collision.
 {¶ 3} Cash had liability insurance with Allstate Insurance Company in the amount of $12,500 per person, $25,000 per accident. Reichardt was insured by Grange Mutual Insurance Company and had uninsured/underinsured motorist protection of $100,000 per person, $300,000 per accident.
 {¶ 4} In June 1999, Reichardt settled with Cash and Allstate for the policy limit of $12,500, in exchange for releasing them from any further liability. Grange Mutual then tendered $87,500[1]
to Reichardt in settlement of his underinsured motorist claim.
 {¶ 5} At the time of the accident, Reichardt was employed by R.A. Jones, whose parent company is B.W. International. B.W. International has a policy of commercial automobile liability insurance with National Surety, and R.A. Jones is an insured under that policy.
 {¶ 6} In December 2000, Reichardt filed a declaratory judgment action, seeking a declaration that he was entitled to underinsured motorist coverage under B.W. International's automobile liability insurance policy with National Surety, pursuant to Scott-Pontzerv. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-293. National Surety filed an answer denying liability.
 {¶ 7} In November 2001, National Surety moved for summary judgment. In January 2002, the trial court granted summary judgment in National Surety's favor. The trial court found that, notwithstanding National Surety's contention to the contrary, Reichardt qualified as an insured under the National Surety policy, pursuant to Scott-Pontzer. But the trial court agreed with National Surety that Reichardt's failure to comply with the notice provision in the policy destroyed National Surety's subrogation rights and released National Surety from its duty to pay underinsured motorist benefits.
 {¶ 8} Reichardt appeals from the trial court's grant of summary judgment in favor of National Surety, raising one assignment of error. National Surety cross-appeals from the trial court's judgment, raising one cross-assignment of error. We shall address National Surety's cross-assignment of error first to facilitate our analysis.
Cross-Assignment of Error No. 1
 {¶ 9} "THE TRIAL COURT ERRED IN FINDING THAT APPELLANTS (sic) IS AN INSURED UNDER THE POLICY, AND APPELLANT IS THEREFORE NOT ENTITLED TO COVERAGE."
 {¶ 10} National Surety argues the trial court erred in finding that Reichardt was an insured under his employer's parent company's automobile liability policy, pursuant to Scott-Pontzer, 85 Ohio St.3d 660. National Surety alleges the policy contains language "not apparently considered" by the court in Scott-Pontzer, and that such language demonstrates why the reasoning of that case should not be applied here.
 {¶ 11} In Scott-Pontzer, the court determined, among other things, that appellant's decedent was an insured under the automobile liability insurance policy of his employer, Superior Dairy. The policy defined "insured," in relevant part, as "You," and "If you are an individual, any family member." The insurer argued that the inclusion of the phrase, "If you are an individual, any family member" removed any doubt that the "you" referred solely to Superior Dairy.
 {¶ 12} The court rejected that argument, noting that while the policy could be interpreted to mean that Superior Dairy was the sole named insured under the policy, it could also be interpreted to include Superior Dairy's employees, because "a corporation can act only by and through real live persons." Id. at 664. The court further noted:
 {¶ 13} "It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons including to the corporation's employees." (Emphasis added.) Id.
 {¶ 14} National Surety points out that the policy at issue in this case names numerous individuals as insureds in its Drive Other Car Coverage ("DOCC") endorsement. Consequently, National Surety argues, the "ambiguity" that the Scott-Pontzer court found to exist where only a corporation is identified as a named insured (since corporations cannot drive cars or sustain injuries) does not exist under the policy at issue herein. Specifically, National Surety asserts that because the term "you" in the policy in question refers not only to the corporation but to specifically identified employees, there is no ambiguity, and thus, no reason to extend coverage to appellants. We disagree with National Surety's arguent.
 {¶ 15} Initially, the same type of DOCC endorsement in National Surety's policy was contained in the policy at issue in Scott-Pontzer. During the summary judgment proceedings, Reichardt filed a certified copy of the insurance policy at issue in Scott-Pontzer, which named several individuals as insureds in the schedule attached to the endorsement.
 {¶ 16} Some courts reviewing policy language identical to that under consideration in this case have agreed with the argument that National Surety is now raising, i.e., that the existence of a DOCC endorsement eliminates the ambiguity found in Scott-Pontzer. SeeWestfield v. Galatis, Summit App. No. CA 20784, 2002-Ohio-1502, and Whitev. American Mfrs. Mut. Ins. Co., Montgomery App. No. 19206, 2002-Ohio-4125.
 {¶ 17} However, we conclude that a DOCC endorsement does not
eliminate the ambiguity identified in Scott-Pontzer. See Still v.Indiana Ins. Co., Stark App. No. 2001 CA 00300, 2002-Ohio-1004. National Surety's policy still lists the corporation as the named insured. Therefore, pursuant to Scott-Pontzer, it must be interpreted as extending coverage to all of the corporation's employees, as found by the Still
court, since the "corporation can act only by and through real live persons." Scott-Pontzer at 664. While the fact that specific individuals are named in the DOCC endorsement could be interpreted as meaning that only those specific individuals are covered, that is only one possible interpretation of the policy. See, generally, id. The continued inclusion of the corporation as a named insured allows the same interpretation rendered in Scott-Pontzer, to wit: the policy extends coverage to all of the corporation's employees, "since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle."
 {¶ 18} In light of the foregoing, National Surety's cross-assignment of error is overruled.
Assignment of Error No. 1
 {¶ 19} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT THOMAS REICHARDT BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE NATIONAL SURETY CORPORATION."
 {¶ 20} Reichardt contends the trial court erred in granting summary judgment to National Surety on the basis of his failure to preserve National Surety's right to subrogation. He raises several arguments in support of this contention, none of which have merit.
 {¶ 21} Summary judgment is to be granted only when there is no material issue of fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in its favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
 {¶ 22} A subrogation clause is an enforceable precondition to an insurer's duty to provide underinsured motorist coverage. Bogan v.Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus. "[A]n insured who destroys his insurer's subrogation rights without the insurer's knowledge does so at his peril." McDonald v.Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, 31.
 {¶ 23} Here, there is no question that Reichardt failed to protect National Surety's subrogation rights as it was required to do under the terms of the insurance policy. Section E(2)(c) of the National Surety policy states:
 {¶ 24} "E. Changes in Conditions
 {¶ 25} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
 {¶ 26} "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the insured and the insurer of the vehicle described in paragraph F.3.b. of the definition of uninsured motor vehicle[2] and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of uninsured motor vehicle."
 {¶ 27} Reichardt acknowledges that he did not provide National Surety with the requisite prior notice of his settlement agreement with Cash and Allstate. Nevertheless, Reichardt argues that Section E(2)(c) of the National Surety policy is in conflict with paragraph (C)(1) of the policy, which states:
 {¶ 28} "C. EXCLUSIONS
 {¶ 29} "This insurance does not apply to:
 {¶ 30} "1. Any claims settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph F.3.b. of the definition of `uninsured motor vehicle.'"
 {¶ 31} Reichardt asserts that these conflicting provisions create an ambiguity in the policy that renders the subrogation requirement unenforceable. In support, he cites the Tenth Appellate District's decision in Howard v. State Mut. Ins. Co. (Mar. 14, 2000) Franklin App. No. 99 AP-57, which reviewed a policy with language similar to that quoted here. The court in Howard found that the language was "confusing, ambiguous, and even misleading[,]" and concluded that the insurer's consent to the insured's settlement with the tortfeasor was not required.
 {¶ 32} However, the Second Appellate District refused to followHoward in Cincinnati Ins. Co. v. Estate of McClain, Greene App. No. 2001-CA-96, 2002-Ohio-1190. The court refused to find an ambiguity in policy language identical to that in Howard and in this case. The court stated in relevant part as follows:
 {¶ 33} "In reading the policy, an insured would encounter Section C. `Exclusions' and discover that failure to obtain consent prior to settling a claim with an underinsured tortfeasor does not exclude
coverage under the policy. However, if the insured would continue to read the policy, he would also encounter Section E. `Changes in Conditions,' and ascertain his duties in the event of a loss. This section does not require the insured to obtain consent prior to settling the loss in order for coverage to be provided, but does impose a duty upon the insured to notify the insurance company prior to finalizing any settlement with a tortfeasor if the insured intends to seek underinsured motorist coverage. Stated differently, the insured does not need to await permission from CIC to settle, but does need to inform the insurance company that a tentative settlement has been reached to allow CIC to take whatever action it wishes to take. See McDonald v. Republic-FranklinIns. Co. (1989), 45 Ohio St.3d 27, 31-32 (explaining the options of the insurance company once notified of a tentative settlement with the tortfeasor).
 {¶ 34} "Moreover, the character of the `consent' provision and the `notice' provision is entirely different. If consent were required under the policy and not obtained, no coverage would exist under the policy. On the other hand, the notification provision establishes a duty for the insured. If the duty is breached, further inquiry is required to determine whether coverage should be precluded under the policy. Contrary to the estate's contentions, this policy specifies that the duty of notification is imposed upon the insured in order to protect CIC's subrogation rights against the tortfeasor. After all, prior to notifying the underinsured carrier, the insured is the only person who can preserve those rights for the insurance company. McDonald, supra, at 31. While we agree that CIC's policy could have been written more clearly, we do not find that the policy provisions are ambiguous." (Emphasis sic.) Estateof McClain, 2002-Ohio-1190 at ¶ 29-30. See, also, Gidley v.Cincinnati Ins. Co. (Apr. 17, 2002), Summit App. No. 20813, 2002-Ohio-1740 (citing and following McClain).
 {¶ 35} Furthermore, the Tenth Appellate District recently distinguished Howard in Alatsis v. Nationwide Ins. Enterprise, Franklin App. No. 01AP-1038, 2002-Ohio-2906, on the basis of the following policy language not present in the policy at issue in Howard:
 {¶ 36} "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them." Alatsis, 2002-Ohio-2906 at ¶ 15.
 {¶ 37} The Alatsis court essentially found that this language removed any ambiguity and confusion in the policy and concluded that because the insured materially prejudiced the insurer's subrogation rights, the insurer was under no obligation to provide coverage under the policy. The same language relied upon in Alatsis to distinguish Howard is present in the National Surety policy at issue herein.
 {¶ 38} Additionally, the fact that the possibility of recovery under the subrogation provision may have been nonexistent in this case is irrelevant. As the Ohio Supreme Court has stated:
 {¶ 39} "A right of subrogation, the protection of which is a precondition to underinsured motorist coverage, is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. Such right constitutes a `real and existing' right at any time the injured insured is in a position to release a liable party from its liability. It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights will result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right." (Emphasis sic.) Bogan,36 Ohio St.3d at 31; see, also, Estate of McClain, 2002-Ohio-1190 at ¶ 34, andAlatsis, 2002-Ohio-2906 at ¶ 25 (plaintiff's failure to preserve insurer's subrogation rights prevents her recovery, whether or not insurer demonstrates the settlement caused it any loss; in final analysis, plaintiff materially compromised insurer's subrogation rights by releasing tortfeasor from liability, thereby breaching her duty under the policy to provide insurer of notice of any tentative settlement).
 {¶ 40} Reichardt also argues that he was not required as a "matter of public policy" to provide National Surety with prior notice because his ability to recover under the National Surety policy did not exist under Ohio law at the time he settled with Cash and Grange, and, therefore, it was impossible for him to notify National Surety of the impending settlement.
 {¶ 41} We see nothing in the trial court's ruling that violates the public policy of this state. Reichardt was free to bring the same type of claim against National Surety that the plaintiff inScott-Pontzer brought against the insurance company of her late husband's employer. See Scott-Pontzer, 85 Ohio St.3d at 661.
 {¶ 42} Lastly, Reichardt argues that National Surety waived its right to receive prior notice of his settlement with Cash and Grange because it adopted the position that he was not covered by its policy. In support of this argument, Reichardt cites Bakos v. Insura Property Cas. Ins. Co. (1997), 125 Ohio App.3d 548. However, Bakos is readily distinguishable from this case. In Bakos, the court held:
 {¶ 43} "It is unreasonable to require that an insured notify its insurance company of a proposed settlement after the insurance company has already informed the insured that it would not provide coverage pursuant to the insurance policy. In the matter sub judice, Insura informed appellant that his policy of insurance would not provide coverage; therefore, appellant was essentially on his own. It would be disingenuous, at best, for Insura to deny coverage to its insured and then claim that he was, nevertheless, required to comply with the requirements in his insurance policy." Id. at 557, declining to follow this court's decision in Prater v. State Auto Prop. Cas. Ins. Co.
(May 20, 1996), Clermont App. No. CA95-12-087.
 {¶ 44} Thus, in Bakos, the insurer first denied uninsured motorist coverage to the insured, and then argued, unsuccessfully, that the insured breached the terms of the policy by settling with the tortfeasor without first obtaining its consent. See Bakos at 556-557. Here, by contrast, by the time Reichhardt sought coverage from National Surety, he had already settled with Cash and Grange Mutual, thereby destroying National Surety's subrogation rights. Unlike the insurer in Bakos, National Surety did not inform Reichardt that it would not provide coverage before he settled with Cash and Grange Mutual. Instead, it informed him of that fact after he had destroyed National Surety's subrogation rights by settling with those parties without giving National Surety prior notice of the settlement.
 {¶ 45} In light of the foregoing, Reichardt's sole assignment of error is overruled.
Judgment affirmed.
POWELL and VALEN, JJ., concur.
[1] This amount consisted of the $100,000 underinsured motorist coverage limit of Grange Mutual's policy minus the $12,500 received from Cash and Allstate.
[2] Section F.3.b. defines an "uninsured motor vehicle" to include an "underinsured motor vehicle," which, in turn, is defined to mean "* * * a land motor vehicle or trailer for which the sum of all liability, bonds or policies applicable at the time of an `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged but their limits are less than the limits of insurance of this coverage."