[Cite as *McGuire v. Motorists Mut. Ins. Co.*, 2021-Ohio-3945.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JOAN JONES MCGUIRE, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 29165 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-232 |
| | : | |
| MOTORISTS MUTUAL INSURANCE | : | (Civil Appeal from |
| COMPANY, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of November, 2021.

. . . . . . . . . . .

PHILLIP W. WIEHE, Atty. Reg. No. 0095968, 2215 Arbor Boulevard, Moraine, Ohio 45439
    Attorney for Plaintiffs-Appellants

MERLE D. EVANS,III, Atty. Reg. No. 0019230, P.O. Box 35459, 4684 Douglas Circle N.W., Canton, Ohio 44735
    Attorney for Defendants-Appellees

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Joan Jones McGuire and William McGuire appeal from the trial court's entry of summary judgment against them on their complaint seeking uninsured-motorist benefits from Motorists Mutual Insurance Company.[1] The appellants contend their Motorists Mutual automobile insurance policy extended uninsured-motorist coverage to Joan McGuire, who was shot by an occupant of an unidentified motor vehicle. The trial court found that no coverage existed. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On February 3, 2018, Joan McGuire was a passenger in a vehicle driven by her husband, William McGuire. The vehicle was covered by a Motorists Mutual insurance policy. William was the named insured under the policy, which included uninsured-motorist coverage. As the McGuires were traveling on Third Street in Dayton, the occupants of two other cars exchanged gunfire. Joan McGuire sustained serious injuries when a stray bullet struck her head. The other vehicles fled the scene, and their occupants were not identified.

{¶ 3} Following the shooting, Joan McGuire sought uninsured-motorist benefits under the Motorists Mutual policy. The insurance company denied her claim. The

---

[1] The complaint also named as defendants the Motorist Insurance Group and "John Doe" drivers and passengers in other vehicles. No "John Doe" defendants ever were identified, and the trial court separately entered summary judgment in favor of the Motorists Insurance Group nka Encova Insurance. The trial court held that the Motorists Insurance Group/Encova never had an insurance contract with the McGuires. The present appeal does not challenge that determination. The McGuires address only the trial court's determination that no uninsured-motorist coverage existed under a policy issued by Motorists Mutual Insurance Company.

McGuires then filed the present lawsuit, alleging breach of contract, seeking declaratory judgment and specific performance, and asserting a claim for unjust enrichment. Following discovery, the trial court sustained a summary-judgment motion filed by Motorists Mutual and denied the McGuires' competing motion. In its December 28, 2020 ruling, the trial court found no uninsured-motorist coverage for three related reasons: (1) the shooting was an intervening cause of Joan McGuire's injury, unrelated to the use of an uninsured vehicle; (2) the instrumentality that caused her injury was a firearm, not an uninsured motor vehicle; and (3) her injury did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle. This appeal followed.

**Analysis**

**{¶ 4}** The McGuires' sole assignment of error states:

THE TRIAL COURT ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS, BY OVERRULING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BY GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

**{¶ 5}** Under Civ.R. 56, summary judgment is proper when: (1) a case presents no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); *Dalzell v. Rudy Mosketti, L.L.C.*, 2d Dist. Clark No. 2015-CA-93, 2016-Ohio-3197, ¶ 5, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696

N.E.2d 201 (1998). The substantive law of the claim being litigated determines whether a fact is "material." *Herres v. Millwood Homeowners Assn., Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21, citing *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995). We review a trial court's ruling on a summary-judgment motion de novo. *Dalzell* at ¶ 6, citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

{¶ 6} With regard to the Motorists Mutual policy, we note that "[t]he interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court." *Jackson v. Pub. Entities Pool of Ohio*, 2d Dist. Montgomery No. 23049, 2009-Ohio-1772, ¶ 13, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). In construing the terms of an insurance policy, we are guided by rules of contract interpretation. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus. This rule cannot be used to create ambiguity where none exists. *Hacker v. Dickman*, 75 Ohio St.3d 118, 119-120, 661 N.E.2d 1005 (1996). Ambiguity exists only when a provision is susceptible of more than one reasonable interpretation. *Id.* at 120. "Also, '[t]he fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect.' " *Selective Ins. Co. of Am. v. Arrowood Indemn. Co.*, 2d Dist. Montgomery No. 23400, 2010-Ohio-557, ¶ 11, quoting 57 Ohio Jurisprudence 3d (2005)

394, Insurance, Section 315.

{¶ 7} As relevant here, the Motorists Mutual policy provided:

**Part C – Uninsured Motorists Coverage – Ohio**

**INSURING AGREEMENT**

A.  We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of:

1.  An **uninsured motor vehicle** as defined in Sections 1., 2., and 4. of the definition of an **uninsured motor vehicle** because of **bodily injury**:

a.  Sustained by an **insured**; and

b.  Caused by an accident.

2.  An **uninsured motor vehicle** as defined in Section 3. of the definition of an **uninsured motor vehicle** because of **bodily injury** sustained by an **insured**.

The owner or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**. * * *

* * *

C. **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be either:

a. Less than the limit of liability for this coverage; or

b. Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes **bodily injury** without hitting:

a. You or any **family member**;

b. A vehicle which you or any **family member** are **occupying**; or

c. **Your covered auto**.

The facts of the accident or intentional act must be proved. We will only accept independent corroborative evidence.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insurance company:

a. Denies coverage; or

b. Is or becomes insolvent.

{¶ 8} Here Sections 1, 2, and 4 of the definition of an uninsured motor vehicle do not apply because the vehicles involved in the shooting were not identified and the owners or operators are unknown. That being so, the only potentially applicable definition of an uninsured motor vehicle is found in Section 3. To obtain coverage under the policy, the McGuires were required to establish that the unknown owner or operator's liability arose out of the ownership, maintenance, or use of a hit-and-run vehicle which hit or which caused bodily injury without hitting the vehicle Joan McGuire was occupying.

{¶ 9} On appeal, the McGuires argue that the phrase "ownership, maintenance, or use" is ambiguous and must be construed broadly in their favor. They assert that the word "use" reasonably may be interpreted to apply where a hit-and-run vehicle was used to

convey gunmen to and from the scene and to facilitate the shooting of Joan McGuire from the hit-and-run vehicle.

{¶ 10} Although the McGuires cite cases from various jurisdictions, they fail to address *Howell v. Richardson*, 45 Ohio St.3d 365, 544 N.E.2d 878 (1989), which we find to be dispositive of the "ownership, maintenance, or use" issue.[2] In *Howell*, a tortfeasor negligently discharged a firearm from his vehicle into another vehicle, striking one of the occupants. After obtaining a judgment against the tortfeasor, the victim sued the tortfeasor's insurer. The trial court directed a verdict for the insurer, finding that the act of shooting from a vehicle fell outside of policy language covering bodily injury "caused by accident resulting from the ownership, maintenance or use" of a motor vehicle. *Id.* at 368. The Ohio Supreme Court agreed that reasonable minds could not find the shooting resulted from the "use" of a motor vehicle. It upheld the directed verdict, finding "that bodily injury to an insured resulting from the discharge of a firearm by a tortfeasor is not encompassed within the terms of a policy of insurance which limits coverage to injuries 'caused by accident resulting from the ownership, maintenance or use of' an automobile." *Id.* at 369.

{¶ 11} In reaching its conclusion, the Ohio Supreme Court applied *Kish v. Central Natl. Ins. Group of Omaha*, 67 Ohio St.2d 41, 424 N.E.2d 288 (1981). *Kish* was an uninsured-motorist case. The plaintiff's decedent was involved in a car accident. After both drivers exited their vehicles, the driver of the other car shot and killed Kish. His wife

---

[2] The appellants' only mention of *Howell* comes at page 10 of their opening brief in a block quote from a 10th District opinion. In the quoted passage, the 10th District cited *Howell* for the proposition that insurance coverage *does not exist* when an insured is injured by a bullet fired from another vehicle into the insured's vehicle. *See Miller v. Rollins Leasing Corp.*, 10th Dist. Franklin No. 98AP-1347, 1999 WL 739539, *5 (Sept. 23, 1999).

sought uninsured-motorist coverage under Kish's policy. The Ohio Supreme Court upheld the entry of summary judgment in favor of the insurer. The issue was whether the shooting arose out of the "ownership, maintenance, or use" of a motor vehicle. *Id.* at 49. The Ohio Supreme Court held that it did not, reasoning that "the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle." *Id.* at 50. The *Kish* court acknowledged that coverage would have existed if the murderer would have used his vehicle rather than a shotgun to kill the victim. *Id.* at 51.

{¶ 12} The only potentially significant distinction between *Kish* and the present case is that the two men in *Kish* were outside of their vehicles when the shooting occurred. As noted above, however, the Ohio Supreme Court followed *Kish* in *Howell*, which involved the shooter and the victim's being inside of their respective vehicles. Other Ohio appellate courts have applied *Kish* and *Howell* to affirm the entry of summary judgment for an insurer on the basis that injury resulting from the discharge of a firearm in an uninsured vehicle does not arise out of the ownership, maintenance, or use of the vehicle. *See, e.g., Westfield Ins. Co. v. Cahill*, 76 Ohio App.3d 410, 602 N.E.2d 339 (3d Dist. 1991) (motorist shot twice by occupant of another vehicle during a high-speed chase); *Farmers Ins. of Columbus, Inc. v. Sotak*, 10th Dist. Franklin Nos. 94APE01-127, 94APE01-128, 1994 WL 383723 (July 19, 1994) (victim, a passenger in an insured vehicle, was shot in the head by occupant of a following vehicle); *Arrowood v. Lemieux*, 8th Dist. Cuyahoga No. 81312, 2002-Ohio-6336 (victim shot by occupant of an uninsured parked car).

{¶ 13} In *Babb v. Grizzell*, 2d Dist. Montgomery No. 17551, 1999 WL 960579 (July 30, 1999), this court applied *Kish* and *Howell* to find no uninsured-motorist coverage

where the plaintiff was hit by a full beer bottle thrown from another vehicle. The trial court entered summary judgment in favor of the insurer, and this court affirmed. After reviewing *Kish* and *Howell*, we reasoned:

> Here, a thrown beer bottle, not a vehicle, was the instrument that caused Babb's injuries. Bir's and Girzell's [sic] use of a vehicle was no different from that of Richardson's use of his vehicle. [Richardson was the defendant in *Howell*.] Therefore, pursuant to *Howell*, *supra*, Babb's injuries were not caused by an accident arising out of the "use" of an uninsured motor vehicle.

> Babb argues that *Howell* is distinguishable because it is not clear in that opinion whether Richardson was inside his truck when he fired the shot. However, the unreported appellate opinion in that case does make it clear that Richardson was in his truck when he fired the shots at Howell and Bayless. *See Howell v. Richardson* (Dec. 29, 1987), Franklin App. No. 86AP-678, unreported ("The trial court also found that plaintiff [Bayless] was a passenger in one motor vehicle while defendant's insured [Richardson] was the operator of another; [and] that while operating such vehicle defendant's insured exchanged shots with another person in the vehicle in which plaintiff was a passenger)."

*Babb* at *3-4.

{¶ 14} We see no material distinction between *Howell*, *Babb*, and the present case as to whether Joan McGuire's injury arose out of the "use" of a motor vehicle. In each case, a projectile caused injury when it was fired or thrown from a vehicle. On the basis

of *Howell*, *Babb*, and the other cases cited above, we conclude that Joan McGuire's injury did not arise out of the "ownership, maintenance, or use" of an uninsured motor vehicle as a matter of law. Her injury arose out of the use of a firearm. That being so, the trial court properly entered summary judgment in favor of Motorists Mutual on the appellants' complaint.

{¶ 15} In opposition to our conclusion, the McGuires cite cases from Delaware and Michigan that have no bearing on the applicability of *Howell*, which they fail to discuss. In any event, the Delaware case actually supports our reasoning. In *Nationwide Gen. Ins. Co. v. Royal*, 700 A.2d 130 (1997), the Delaware Supreme Court held that injuries suffered by a mobile-home occupant during a drive-by shooting *did not* arise out of the "use" of a vehicle. The majority also noted that "in other jurisdictions, coverage is routinely denied" on similar fact patterns. *Id.* at 132-133. The McGuires' citation comes from the dissent—a fact they fail to acknowledge.

{¶ 16} The Michigan case the appellants cite, *National Union Fire Ins. Co. of Pittsburgh v. Owens Corning, Inc.*, Case No. 1:99cv519, 2001 WL 37120201 (W.D. Mich. 2001), is equally unconvincing. It applied Michigan law and involved an explosion in an insured trailer. The federal district court found that the acts causing the explosion were "intimately connected with" and "necessary to" the transportation of cargo and the hauling of the trailer. *Id.* at *5. In finding insurance coverage applicable, the court recognized *Kish*, *Howell*, and other cases but deemed them "entirely distinguishable" because they involved acts "unrelated to the operation of a motor vehicle." *Id.* at *8.

{¶ 17} The appellants also cite several Ohio appellate decisions that are distinguishable. In *Miller v. Rollins Leasing Corp.*, 10th Dist. Franklin No. 98AP-1347,

1999 WL 739539, *5 (Sept. 23, 1999), the Tenth District found insurance coverage where the plaintiff was injured while unloading a trailer. The appellate court reasoned that "[l]oading, transporting, and unloading freight are all components of a freight trailer's use." *Id.* at *6. In reaching this conclusion, it recognized that under *Kish* and *Howell*, injuries arising out of the discharge of a firearm *are not* caused by the ownership, maintenance, or use of a motor vehicle. *Id.* at *4-5.

{¶ 18} In *Buckeye Union Ins. Co. v. Carrell*, 77 Ohio App.3d 319, 602 N.E.2d 305 (10th Dist.1991), two men assaulted the plaintiff in a vehicle he was driving, commandeered the vehicle, and used it to rob a bank. The Tenth District concluded that the car was uninsured once the assailants commandeered it. The appellate court also held that injuries the victim sustained while in the car were causally related to the assailants' use of the vehicle and, therefore, that uninsured-motorist coverage existed. In reaching this conclusion, the Tenth District noted that the trial court had distinguished *Howell* because the claimant in *Howell* was the victim of a gunshot fired from a separate vehicle. *Id.* at 322-323.

{¶ 19} In *Bakos v. Insura Prop. and Cas. Ins. Co.*, 125 Ohio App.3d 548, 709 N.E.2d 175 (8th Dist.1997), the plaintiff sustained injuries when a passenger pushed him out of a vehicle he was driving and fled in the vehicle. The Eighth District reasoned that the vehicle became uninsured once the assailant took control of it. The appellate court distinguished *Howell*, noting that the victim in *Howell* was injured by a bullet "unrelated to the use of the vehicle." *Id.* at 555. In contrast to *Kish*, *Howell* and other cases, the Eighth District found "a much more direct connection between appellant's operation of the vehicle and the injuries appellant sustained." *Id.* It concluded that "[r]easonable minds

may differ as to what extent the injuries appellant received while driving the car, while being pushed out of the car, and while being in the roadway and struck by an oncoming car arose out of the operation, use, or maintenance of the uninsured vehicle." *Id.*

{¶ 20} Finally, in *Shouman v. Nationwide Ins. Co.*, 42 Ohio App.3d 159, 537 N.E.2d 696 (8th Dist.1988), the appellants were occupants of a vehicle that was pursued by gunmen in an unidentified vehicle. During the pursuit, the appellants' vehicle was rammed and one of its occupants was shot. The gunmen ultimately forced the appellants' vehicle off the road, exited their own vehicle, and inflicted more injuries on the appellants. In a per curiam opinion, the Eighth District reasoned:

> Under *Kish*, as a matter of law, there would be no causal connection between the ownership, maintenance or use of the uninsured motor vehicle and the injuries inflicted by the robbers after they had exited their vehicle. There would be a causal connection between the use of the uninsured motor vehicle and bodily injuries sustained by appellants as a result of the ramming by the uninsured vehicle. *We believe there is a question of fact as to whether a causal connection exists between the ownership, maintenance or use of the uninsured motor vehicle and the injuries sustained by appellants as a result of gunfire from that vehicle.* It follows that summary judgment was improperly granted. * * *

(Emphasis added.) *Id.* at 159-160.

{¶ 21} The McGuires cite the foregoing language and argue that the trial court erred in entering summary judgment for Motorists Mutual. We note, however, that *Shouman* predated *Howell*, which held that injury resulting from discharging a firearm in

a vehicle does not arise out of the ownership, maintenance, or use of the vehicle as a matter of law. *See Cahill*, 76 Ohio App.3d 410, 412, 602 N.E.2d 339 (finding that the holding in *Howell* precluded adopting the reasoning of *Shouman*). In a more recent case, the Eighth District itself declined to follow *Shouman*, recognizing that *Howell* prevented it from doing so. *See Arrowood*, 8th Dist. Cuyahoga No. 81312, 2002-Ohio-6336, at ¶ 14.

{¶ 22} In their reply brief, the McGuires rely on *Girgis v. State Farm Mut. Auto. Ins. Co.*, 75 Ohio St.3d 302, 662 N.E.2d 280 (1996), and *Smith v. Erie Ins. Co.*, 148 Ohio St.3d 192, 2016-Ohio-7742, 69 N.E.3d 711, to argue that physical contact with an uninsured vehicle is not required for uninsured-motorist coverage to apply. Therefore, they maintain that coverage exists when a bullet is fired from an uninsured vehicle and causes injury to an insured.

{¶ 23} In *Girgis*, the Ohio Supreme Court invalidated on public-policy grounds uninsured-motorist insurance provisions requiring physical contact between an insured vehicle and an uninsured vehicle. In *Smith*, the Ohio Supreme Court addressed the evidentiary proof required in a no-contact case. It held that a policy requirement for "independent corroborative evidence" in a non-physical-contact case "can be met using evidence derived from the insured's testimony." *Smith* at ¶ 20-24. Neither case has any bearing on the McGuires' appeal.

{¶ 24} In the course of its ruling, the *Girgis* court modified two earlier Ohio Supreme Court opinions, one of which, like our decision in *Babb*, involved a bottle thrown from one car into another car. The Ohio Supreme Court's bottle case, *Basford v. State Auto Mutual Ins. Co.*, was consolidated with another case, *Yurista v. Nationwide Mut. Ins. Co.*, and the two companion cases are cited as *Yurista v. Nationwide Mut. Ins. Co.*, 18

Ohio St.3d 326, 481 N.E.2d 584 (1985).

{¶ 25} In *Basford*, the trial court had found no uninsured-motorist coverage for two reasons: (1) the policy at issue contained a provision requiring physical contact with the uninsured car and (2) an injury occurring when a pop bottle is thrown from one vehicle into another does not arise out of the ownership, maintenance, or use of a motor vehicle. *Yurista* at 328. On appeal, the Ohio Supreme Court affirmed. In so doing, it upheld the policy provision requiring physical contact with a hit-and-run uninsured vehicle. *Id*. at 330. Thereafter, in *Girgis*, the Ohio Supreme Court modified, but did not overrule, *Basford*, *Yurista*, and other cases to the extent that they had upheld physical-contact requirements in insurance policies. The *Girgis* court identified the "precise issue" before it as "whether an automobile insurance policy requiring actual physical contact between the unidentified vehicle and either the insured or the insured's vehicle as an absolute prerequisite to recovery comports with public policy."

{¶ 26} Notably, *Girgis* did not analyze or modify the alternative basis for finding no coverage in *Basford*, namely that throwing a bottle from one car into another does not cause injury that arises out of the "use" of a motor vehicle. Therefore, that aspect of *Basford* remains good law and is consistent with *Howell* and our own 1999 opinion in *Babb*, which we decided after *Girgis*. The Motorists Mutual policy in the present case does not contain language requiring physical contact with an uninsured vehicle. Therefore, *Girgis* has no applicability.

{¶ 27} Finally, the Motorists Mutual policy pertinently defines an "uninsured motor vehicle" as a "hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes bodily injury without hitting" a vehicle occupied by the insured. Here

the unidentified shooter's *vehicle* did not hit or cause physical injury without hitting a vehicle occupied by Joan McGuire. Her injury was caused by a firearm. The shooter's vehicle did not cause any injury. Therefore, it did not fit the definition of an "uninsured motor vehicle" under the Motorists Mutual policy. The present case is easily distinguishable from *Girgis*, which found coverage where an unidentified vehicle swerved into the plaintiff's lane of travel, causing her to lose control of her vehicle. In that situation, the uninsured vehicle itself caused the injury. Likewise, in *Smith* the plaintiff swerved off the road and hit several trees to avoid an unidentified vehicle that had crossed into his lane. Again, in that situation the "use" of the phantom vehicle caused the accident and resulting injuries. Unlike *Girgis* and *Smith*, the facts before us are directly analogous to *Howell* and *Babb*, which found as a matter of law that the injuries at issue *did not* arise out of the ownership, maintenance, or use of an uninsured motor vehicle. Accordingly, we agree with the trial court's determination that Motorists Mutual was entitled to summary judgment.

{¶ 28} In the final portions of their opening brief, the McGuires argue about the meaning of the terms "accident" and "instrumentality." They also stress that Motorists Mutual specifically could have excluded injuries caused by firearms from uninsured-motorist coverage if it desired. These arguments ignore the ultimate reality that Joan McGuire's injury must have arisen out of the "ownership, maintenance, or use" of an uninsured motor vehicle for uninsured-motorist coverage to apply. Arguments debating the meaning of the words "accident" and "instrumentality" do not overcome the absence of a genuine issue of material fact as to whether Joan McGuire's injury arouse out of the "use" of an uninsured vehicle. In addition, Motorists Mutual had no need to adopt a policy

exclusion denying coverage when an insured is shot by occupants of a hit-and-run vehicle. The terms of the insuring agreement made clear that no coverage existed in the first instance. Therefore, there was no need for an exclusion.

{¶ 29} Based on the analysis set forth above, we hold that the trial court properly entered summary judgment against the appellants on all four claims in their complaint. The breach-of-contract claim failed because the appellants were not entitled to uninsured-motorist coverage as a matter of law. The request for declaratory judgment regarding a right to coverage properly was denied because the appellants were not entitled to uninsured-motorist coverage. The request for specific performance under the uninsured-motorist provision properly was denied because no coverage existed. Finally, the fact that an uncovered claim was denied did not establish unjust enrichment.

## Conclusion

{¶ 30} The appellants' assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Phillip W. Wiehe
Merle D. Evans, III
Hon. Mary E. Montgomery